# Brotherline *versus* Hammond.

# Same *versus* Juniata Iron Manufacturing Company.

1. In 1794 a tract of 400 acres in Woodberry township was warranted in
the name of "Daniel Kritler," and surveyed as 461 acres.    It was assessed
in Frankstown (cut off from Woodberry) till 1846 (from 1838 in the name of
"Daniel Kladder") and the taxes paid by the owner.    Blair township was
afterwards erected from Frankstown, and the tract continued to be assessed
in Blair in the name of "Kritler," the owner still paying the taxes.    After
1846 a tract of 230 acres was assessed in Frankstown in the name of "Klad-
der," and another of 230 acres in the same name in Huston, which had been
cut off from Woodberry.    The 230 acre tract in Frankstown was sold for
taxes: the purchaser entered on the tract in Blair, claiming that it was the
tract he had bought.    *Held*, as matter of law, that there was no evidence of
the identity of the Frankstown 230 acres with Blair tract.

2. Glass *v.* Gilbert, 8 P. F. Smith 266; Lyman *v.* Philadelphia, 6 Id. 488;
Philadelphia *v.* Miller, 13 Wright 440, adopted.

May 15th 1871.    Before READ, AGNEW, SHARSWOOD and
WILLIAMS, JJ.

Writs of error to the Court of Common Pleas of *Blair county :*
No. 30 and 34, to May Term 1871.

The two cases brought up by these writs of error were actions
of trespass q. c. f. against John Brotherline; one brought Janu-
ary 6th 1869, by The Juniata Iron Manufacturing Company ; the
other brought January 21st 1869, by Essington Hammond.

The actions were for the same trespass, viz. Entering upon a
tract of land in Blair township, on which the iron company
claimed the right to cut timber and of which Hammond claimed
the fee simple.    The tract had originally belonged to Dr. Peter
Shoenberger, under whom the plaintiffs claimed.    The defendant
claimed title under a treasurer's sale for taxes.    The only ques-
tion raised was the identity of the tract sold to the defendant, on
which it was admitted the defendant had cut timber, with that
owned by Shoenberger.

The cases were tried together, November 4th 1869, before
Taylor, P. J.

The plaintiffs gave in evidence a warrant, February 13th 1794,
to Daniel Kritler for 400 acres of land in Woodberry township,
Huntingdon county, and survey July 12th 1794, of 461 acres 97

[Brotherline v. Hammond.]

perches in Woodberry and Frankstown townships, patent to Jonas Hartzell, November 23d 1818, and deed Hartzell to Dr. Shoenberger, December 15th 1818.  Dr. Shoenberger died in 1854.  In 1866 the mining company obtained title to the iron ore and the timber on the tract for mining purposes; in 1868, the land was conveyed to Hammond excepting the interest previously conveyed to the company.

In 1846, the county of Blair was formed from Huntingdon county and embraced the townships of Woodberry and Frankstown.  Huston township was afterward formed out of Woodberry township, and about 1856, Taylor township was formed out of Huston and Woodberry townships.

The plaintiff gave evidence that part of the tract was in Blair township, which was formed from Huston; and part in Frankstown; the cutting was done in Blair township.

The defendant gave evidence of a treasurer's sale to him of 230 acres in Frankstown township in the name of "Daniel Kladder," for taxes of 1859, 1860, deed acknowledged August 13th 1862.  He gave in evidence the assessment books of Huntingdon county from 1805 to 1846; they showed assessments of 461 acres 97 perches to Jonas Hartzell from 1807 to 1818 inclusive, in the name of "Daniel Kridler;" assessments from 1819 to 1846 to Dr. Shoenberger, viz., 1819, 1820, 461 acres 97 perches in the name of "Daniel Kridler;" 1821, same quantity in the name of "Daniel Kritler;" 1822 to 1826, inclusive, 461 acres 7 perches, "Daniel Kredler;" 1827, 1828, "Daniel Kredlin;" 1829 to 1834, inclusive, "Daniel Kritler;" 1835 to 1837, "Daniel Kridler;" 1838 to 1846, when Blair county was erected, "Daniel Kladder."

It was admitted that Dr. Shoenberger paid the taxes on this tract until 1846.

He then showed by a certified copy of the assessment of Frankstown, whilst in Huntingdon county, for 1846, assessment to Dr. Shoenberger in the name of "Daniel Kladder," 461 acres 7 perches; the next assessment, 1847, is the same; it was not on the assessment from 1848 to 1852 inclusive; 1853, "Daniel Kladder," 416 acres; not on the assessment from 1854 to 1859, inclusive; 1860, "Daniel Kladder," 461 acres; 1861, not in; 1862 to 1867 inclusive, "Daniel Kladder," 461 acres 7 perches, it being erased in 1867, and marked "no such tract found."

In Huston township 1847–1848, "D. Kladder," 230; in 1849 it is not there; 1850, "D. Kladder," 230 acres.  In 1856, 1857, after Taylor township was cut off, it was assessed in that township on the seated list in the name of "D. Kidler, 230 acres."

He then gave in evidence the land ledger, page 142, headed "Huston, Taylor, Frankstown," showing charges to "Daniel Kladder" for 230 acres in Frankstown from 1847 to 1866 in-

[*Brotherline v. Hammond.*]

clusive. For 1847 to 1848 Dr. Shoenberger paid the taxes; 1849 to 1852, taxes paid by J. Penn Jones; for 1853 to 1856 the taxes were paid, but it did not appear by whom. For 1859 to 1866 by defendant. In 1847 and 1850 there appeared assessments of 230 acres, " Daniel Kladder part."

The plaintiff in rebuttal gave in evidence " Land Ledger " for Blair township, showing charges to " Daniel Kritler " for 400 acres from 1847 to 1854 inclusive, also 1863 to 1864; payment by Dr. Shoenberger for 1848 to 1850; payment by D. C. McCormick for 1851 to 1854. Also assessment in Blair township for 1860, " Dr. Kritler " 400 acres; also " Land Ledger Frankstown township," page 47, charges to " Daniel Kladder " from 1846 to 1851, on 461 acres and 7 perches; with the further entries " 1852 June 14th sold to county commissioners," " 1864 January 24th, commissioners sold to John Cresswell." "Should be 'Daniel Kritler,' as appears by report of Mr. John Cresswell for the Land Office, Harrisburg, showing that there is no such tract as 'Daniel Kladder,' 31st October 1867. J. Baldridge, clerk.'"

After this information, the commissioners took the tract back and refunded the money to Cresswell.

The plaintiff proved by William Forbes that as manager for McCormick, who was the successor of Shoenberger, he had charge of paying the taxes on the Kritler tract from 1856 to 1866; he paid taxes on it after the sale to Brotherline; paid up to 1865 or 1866. Forbes had the Kritler tract put on the seated list. Plaintiff gave evidence that there was no "Kladder" tract in that vicinity; but that there were two about three miles distant, one in the name of Daniel Kladder, and the other in the name of Jacob Kladder. The defendant's theory was that the one half of the tract, 230 acres, was regularly assessed in Frankstown township, and the other half in Huston or Taylor; that the assessment of the 230 acres in Frankstown sold to him, was a regular assessment of the 461 acre tract warranted in the name of Daniel Kritler.

Judge Taylor charged:—

* * * " But the question still arises, is the assessment of Daniel Kladder as containing 230 acres in Frankstown township, a regular assessment of Daniel Kritler, containing 491 acres and 97 perches, shown to lie in Blair township? Is it, upon the face of the assessment, the same tract? Is it, upon any fair inference that can be drawn from all that appears on the books, or in the evidence, the same land? If it was the same land, the land upon which the cutting was done, that was assessed and sold under the other name, and that made apparent by sufficient evidence, then the sale would vest the title in the defendant. [It is the land that is taxed and sold; but the land cannot be correctly taxed and sold under any name or designation. It must be assessed in some

[Brotherline *v.* Hammond.]

name by which the tract is known—some name connected with it, or some ownership of it, so as to identify it and give not only the owner notice but inform bidders what tract is intended to be sold. There must be some such identification.

"Now, is this tract identified by name in the assessment? Daniel Kladder is an entirely different name from Daniel Kritler. Some difference in the spelling of a name is of but little consequence ; and there are some variations in the assessment of this Kritler traced in Huntingdon county down to 1837, where it occurs sometimes Kritler, and once Krydler, and again Kritler. These variations do not materially change the name, it being still *idem sonans.* · But Kladder and Kritler are as essentially different names as any other words of two syllables beginning and ending with the same letters. They are not *idem sonans.* There is nothing in the sound of one that could suggest the other. They are different names. Then again, while it is a different name, the assessment was of a tract of different quantity, and as lying in another township. Now, in all this, there is an entire absence of every element of identification.

"It is answered, however, that going back to the assessment of the Kritler tract to Dr. Shoenberger in Huntingdon county, it is discovered that although from the date of Hartzell's deed down to 1837, the tract was represented as Kritler, yet the last two years it had been changed to Kladder, and that the certified list from the assessment of 1846 shows that it was introduced into the commissioners' office of this county as Kladder, and first put in taxation here as Kladder. But a previous assessment of a tract, properly or improperly made, does not do away with the necessity of a proper designation of it at the time it is sold ; some designation that indicates in the assessment itself to the owner or purchaser what tract it is ; either from its own name or the name of some owner. How it was assessed on some former occasion, correctly or incorrectly, is not sufficient to make out its identity.

"But upon this subject we find the commissioners here were not laboring under any mistake, or at least the mistake of supposing that Daniel Kladder, 230 acres in Frankstown township, was the same and identical with Daniel Kritler, 461 acres and 97 perches, in Blair township. Their mistake, if it was a mistake, evidently was in supposing that there were two tracts represented by these different names, as of the different quantities and in the different localities. For, in 1847, the first year after the erection of this county, they assessed Daniel Kritler, 400 acres in Blair township, where it belongs. * * * That the commissioners or assessor should have stumbled by chance upon a correct name in this way, so as to get it letter for letter, is not supposable. It is only to be accounted for on the supposition that they had ascertained and knew the true name of the tract. This mark of

[Brotherline *v.* Hammond.]

identity is most convincing. Besides it is in the same township where it is represented to be, and there continues to be assessed from 1847 down to 1854, and as the books show the taxes all the time paid for seven years after the erection of the county, the first seven years of the existence of the county as a county. * * *

"It will be remembered, also, that during the same years prior to the sale; 1846–7–8–50–51—at least down to 1851—the same commissioners were taxing and assessing Daniel Kladder as lying in Frankstown township. Now, could this be accounted for on any other hypothesis than that the commissioners understood, believed, and treated Daniel Kladder as a different tract from Daniel Kritler? Is it not plain, taking all the facts together, can there be a doubt that the commissioners were led into the error, if it was an error, and acted under it all through, of supposing that they had two tracts at least, represented by these names, to deal with, if not more? *      *      *      *      *      *

["The question of identity is generally a question of fact, to be decided by the jury. It is to be determined by the jury when there are facts upon which the question should be submitted. If it were so submitted, in view of the facts in evidence already stated and discussed, and the further fact that the commissioners afterwards took back a treasurer's deed to Mr. Cresswell for the Daniel Kladder tract, having a note put on the book, which *stands* there, that the tract had no existence; it seems to us so perfectly plain that the commissioners thought they were dealing with two tracts—that they thought they were assessing another tract of land distinct from this one when they were assessing and selling the Daniel Kladder—that we do not see how you could have a doubt upon the question."]

["We are, however, constrained to say to you that we regard the Philadelphia case reported in 6 P. F. Smith, 13 Wright, as establishing a proper and necessary rule; one that is calculated to insure reasonable accuracy on the assessment and sale of unseated lands for taxes, and to protect all the parties interested against the consequences of loose and careless practice; and as applicable to this case. And we accordingly instruct you that Daniel Kladder, 230 acres, in Frankstown township, does not designate Daniel Kritler, a tract of different quantity, shown to be in another township; and that there is nothing in the evidence which aids the identification; and, therefore, we say to you, as matter of law, that the defence on this ground fails, and that your verdict must be for the plaintiff."] *      *      *      *      *      *

The verdict was for the plaintiff in each case.

The defendant removed the records to the Supreme Court, and assigned the parts of the charge in brackets for error.

*S. Calvin,* for plaintiff in error, referred to Philadelphia *v.* Miller,

13 Wright 440; Lyman v. Philadelphia, 6 P. F. Smith 488; Glass v. Gilbert, 8 Id. 266.

*S. S. Blair*, for defendants in error, referred to the same cases.

The opinion of the court was delivered, May 25th 1871, by

Agnew, J.—The *locus in quo* of the trespasses complained of in these two actions, was upon a tract owned by the late Dr. Peter Shoenberger, warranted in the name of Daniel Kritler, and containing 461 acres and 97 perches, lying in Blair township, Blair county. It had been assessed in that name for many years in Blair township and taxes paid upon it by Dr. Shoenberger, and after his death by those who succeeded to his title. It was therefore a well-known tract situate in that township, and the same land without dispute upon which the alleged trespass was committed. The defendant attempted to show title in himself, by proving a sale for taxes of an unseated tract of land assessed in the name of Daniel Kladder, containing 230 acres, in Frankstown township. The burthen of proof was on the defendant to show the identity of the tract sold—that it was the same as the well-known tract in the warrant name of Daniel Kritler of 461 acres 97 perches lying in Blair township. The judge below held that there was nothing in the names which could identify them as one and the same tract on the principle of *idem sonans*, and therefore identification must be derived from other sources. The quantity of land in each, and the townships, afforded no means of identification, and that there was no other evidence which under the circumstances of the cause could warrant the conclusion, that the Daniel Kladder tract of 230 acres in Frankstown township was the Daniel Kritler tract of 461 acres in Blair township. In such a case it would require very clear and satisfactory evidence that they were the same. The tract owned by Dr. Shoenberger was assessed in its true name in Blair township for many years before the sale, and he had paid taxes always for it there. The division of the township had taken place in 1846, and his land was assessed in Blair township ever afterward. But the defendant relied on the fact that the land had been assessed in the name of Daniel Kladder in Frankstown township before 1847, and in and after that year that 230 acres were assessed in the same name in Frankstown township, and 230 acres assessed in that name in Huston township which had been cut off from Woodberry township in 1846, making up the whole of the Daniel Kritler tract. Had not the whole of the Daniel Kritler warrant been taxed in its true name in Blair township where it actually lies, and the owner of it been accustomed to pay the taxes of the tract as in that township, there might be a color for the argument that the tract sold was the same tract as the Kritler tract. But the commissioners cannot thus tax the whole tract in

[Brotherline *v.* Hammond.]

its proper name and quantity in its proper township, and tax it also in two parts in two other townships, where it does not lie. This would mislead everybody—owner, treasurer and purchaser. Now when the tract is found assessed in its proper township for years and taxes paid for it as there, to hold that a former misnomer of the tract which had dropped out of memory for many years, would justify a sale of one half of it by that misnomer in a different township, and of the other half by the same misnomer in a third township, is monstrous. If such loose proceedings can strip a man of his property, there is no safety. This case is governed by the principles laid down in the case of The City of Philadelphia *v.* Miller, 13 Wright 440, reaffirmed in Lyman *v.* City of Philadelphia, 6 P. F. Smith 488, and also in Glass *v.* Gilbert, 8 Id. 266. We agree with the court below that under the circumstances of this case there was no sufficient evidence from which the jury could infer that the sale of the Daniel Kladder tract of 230 acres in Frankstown township, could carry the title of the Daniel Kritler tract of 461 acres in Blair township.

The judgment is therefore affirmed.