### E. H. FISK ET AL. v. G. W. COREY ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF LACKAWANNA COUNTY.

Argued February 24, 1891—Decided April 6, 1891.
[To be reported.]

1. The testimony of surveyors that they had run the lines of an official
survey, getting their starting point from a marked tree upon an adjoin-
ing tract, pointed out by a deceased surveyor as a recognized corner of
the adjoining survey, was, in this case, sufficient, in the absence of testi-
mony to the contrary, to establish a location prima facie.

(*a*) Two adjoining tracts of land were originally surveyed in the names
of Moses Starr and Samuel *Giffin* respectively. A patent for each of
these tracts was issued in 1815 to John Reed and others. In 1879, an
assessment of 100 acres, as unseated land, was made in the warrantee
names of "Moses Starr and Samuel *Griffin*," for school purposes.

(*b*) Upon this assessment, the county commissioners levied a tax for
county purposes. In 1882, the county treasurer sold the 100 acres for
unpaid taxes, and made a deed to the purchaser. It was alleged that
the land intended to be assessed and sold was a parcel of land covered
by a natural lake, situated partly on the Starr and partly on the Giffin
tracts:

2. The assessment of the land in the joint names of the separate war-
rantees, not shown to have ever been jointly interested, and without
other matter of identification, coupled with the fact that the name Grif-
fin was substituted for Giffin, amounted to more than a mere irregular-
ity, and the tax sale based thereon conferred no title.

3. A sale for taxes, as one tract and for a gross sum, of separate tracts

which are neither held as one nor owned by the same person at the time of the assessment, and assessed together in his name as the owner of the whole, will confer no title upon the purchaser: Harper v. McKeehan, 3 W. & S. 238; Russel v. Werntz, 24 Pa. 337, distinguished.

4. It is now well settled, though the decisions were not formerly to this effect, that the land assessed must in some way be identified from something appearing in the assessment, otherwise it cannot be sold for taxes; and a proper description is especially called for, when, being covered with water, it is incapable of cultivation or of settlement by ordinary methods.

Before Paxson, C. J., Green, Clark, McCollum and Mitchell, JJ.

No. 14 January Term 1891, Sup. Ct.; court below, No. 22 October Term 1887, C. P.

On June 16, 1887, E. Howell Fisk and John A. Fisk brought trespass against George W. Corey and Daniel A. Corey, to recover damages for an alleged breaking and entering of the plaintiffs' close. The defendants pleaded not guilty.

At the trial, on December 6, 1889, the following facts were shown:

On May 1, 1815, by patent dated that day, the commonwealth granted to John Reed and James Gibson, executors, in trust for the heirs of George Clymer, deceased, and Samuel Meredith, a tract of land in Abington township, Luzerne county, containing 433 acres and 37 perches and allowance, surveyed in the warrantee name of Moses Starr. By patent dated April 29, 1815, another tract, containing 433 acres and 108 perches and allowance, surveyed in the warrantee name of Samuel Giffin, adjoining the Moses Starr and situated in the same township, was granted to the same parties. Those lands are now in North Abington township, Lackawanna county.

The plaintiffs called J. L. Lawrence and A. J. Smith, who testified that they had made a survey of the Starr and Giffin tracts, and ascertained that they included the locus in quo, a natural pond, known as Wall pond, or Lily lake, containing from 80 to 100 acres, situated in part upon the Starr and in part upon the Giffin tract. The starting point of their survey was a marked maple tree at the corner of four tracts, one of which was an adjoiner of the Moses Starr. Declarations of

Statement of Facts.

Thomas Smith, a deceased surveyor, to the effect that that maple was a recognized corner of those four tracts, were shown in evidence against the objection of the defendants.  The manner in which the survey of the Starr and Giffin tracts was made by Lawrence and Smith, starting from the maple, is fully described in the opinion of the Supreme Court, infra.

From the testimony of these and other witnesses, it appeared that various parts of the Starr and Giffin tracts had been farmed and cultivated for over forty years, and in 1879 nearly one hundred persons were living on different parts of the two tracts; that all the land surrounding the lake was, for many years prior to 1879, in the possession of owners claiming under conveyances from the patentees; and that the title deeds of such owners called, in most instances, for the lake as an adjoiner, but, in some places where the shore was irregular, the lines of the deeds extended into the water.

The plaintiffs put in evidence the assessment list for North Abington township, Lackawanna county, for the year 1879. The list was entitled: "Names of taxables and owners or reputed owners of lands assessed for school purposes."  Under the heading, Unseated Lands, appeared an assessment of 100 acres in the warrantee names of "Samuel Griffin and Moses Starr," at a valuation of $4 per acre, aggregating $400.  The plaintiffs claimed that the land intended to be embraced in this assessment was that occupied by Lily lake.  They then put in evidence a minute of a resolution adopted by the board of county commissioners, levying "a six-mill tax upon the assessed valuation of said county, for the purpose of defraying the expenses thereof for the year 1879."

The plaintiffs then offered a deed dated July 12, 1882, acknowledged in open court October 20, 1882, from Ezra H. Ripple, treasurer of Lackawanna county, to A. P. Bedford, George S. Horn and John A. Fisk, for a tract of unseated land containing 100 acres, situated in the township of North Abington and county of Lackawanna, surveyed to S. Griffin and M. Starr, stating the consideration to be "$2.40, school tax."

Counsel for defendants objected to the offer of the deed: First, because no part of the tracts in question had been shown to be unseated; second, because the evidence already produced showed that they were both seated; and third, that no due as-

sessment of those tracts as unseated land had been shown; fourth, that no tax had been duly assessed upon these lands.

By the court: We will admit this deed in evidence. The treasurer's deed, as we understand it, is prima facie evidence that the land is unseated; but the surveyors who have been put upon the stand by the plaintiffs testify, at least one of them has, that these two tracts are covered with farms and farm buildings and by a large number of persons, and of course if that testimony is believed, as the case now stands the land was not unseated at the time of the assessment; exception.[2]

The plaintiffs then put in evidence a lease from A. P. Bedford and George S. Horn, dated April 1, 1887, of the interests of the lessors in a tract of land in North Abington township covered by water, and known as Wall Pond. Further testimony in the case tended to show that for fifty years the adjoining owners, and other persons living in the neighborhood, had been in the habit of using the lake at pleasure, for boating, fishing, taking lilies, swimming, skating, cutting ice, etc.; that its attractions as a place for boating, fishing and the gathering of water lilies, had made it to some extent a summer resort, and both the plaintiffs and the defendants, who were the respective owners of lands bordering upon the lake, had opened boarding houses or hotels for the accommodation of summer visitors; that the plaintiffs, prior to 1882, erected upon their tract a boat-house extending into the water beyond the lines of their deed; that after the treasurer's sale the purchasers claimed ownership of the pond, and thereafter paid taxes upon it; that they re-stocked it with fish, put more boats upon it, and posted up notices warning all others not to trespass upon it; and that the defendants, after notice not to do so, had rowed upon the lake and plucked lilies growing therein.

At the close of the testimony, the court, SITTSER, P. J., charged the jury in part as follows:

It is claimed that there was no sufficient assessment made of this land; that the words in the book offered to show it, show that the taxes were assessed for school purposes only, and entirely vitiate it for any other purpose. But we are of the opinion, that, as long as there is upon the book a valuation of a tract of land, or of parts of two tracts that adjoin each

Charge of Court below.

other, the value, the number of acres put down, this is sufficient to justify the county commissioners in levying a tax upon it, and goes to support the treasurer's deed afterwards given in evidence.

[The principal objection of the defendants to this tax sale, is that there were two tracts assessed together and sold together. Where two separate tracts of land are purchased by one person, that one person becomes the owner of the two tracts; they may be assessed if they are unseated land, as such, under any name or names that will designate their boundaries; and if the taxes are not paid within the time limited by law, the treasurer may sell them for that tax.] [3]

[The defendants further object that there is no evidence which ought to satisfy you either of what land was assessed here, or that the land was unseated land at the time of the assessment of the taxes upon it. The treasurer's deed, with proof of the assessment makes out a prima facie case for the plaintiffs. But it was shown by the cross-examination of some of the plaintiffs' witnesses, the cross-examination of their surveyors, that portions of these two tracts were occupied with farms and farm buildings; and, for the purpose of explaining and showing what the condition of this tract was in 1879, at the time of the assessment, the plaintiffs gave in evidence various deeds which they claim include all the land bordering upon this pond; that it includes, as they claim for it, all the land described in these two tracts, except that covered by the pond and perhaps some small portions of land near the border of the pond. Now, the rule of law is this: If a person owning a tract of land, or where the ownership of two tracts of land unite in one person, if a portion of that tract is sold,—say there is a 400 acre tract and 100 acres of it designated by boundaries is sold,—and the purchaser goes into possession, puts up a house, or does anything else to render his 100 acres seated, it seats the 100 acres he purchased; it seats what he is in possession of under a claim of title, but it does not render seated the balance of that tract if it was unseated before that. These conveyances are given in evidence here for the purpose of showing that these farms and buildings and improvements that were situated upon that tract, did not render seated the land covered by the waters of this lake, except so far as these deeds cover the land under the water.] [5] . . . . .

Charge of Court below.

If the two patents given in evidence here, the Moses Starr and the Samuel Giffin; if the boundaries of these two tracts of land include the land under this pond; if the lines of these tracts run around this pond, then these patents are prima facie evidence that the title to the land is out of the commonwealth. Land under the waters of a pond may be conveyed by the state; they are subject to private ownership; they are liable to taxation, and, if unseated land, may be assessed with taxes and sold as such, and the purchaser acquire a title.

[If you believe these two tracts of land were united in the ownership of one person, and, while so owned by either one person or one or more persons as tenants in common, that they were assessed with taxes under the names of Moses Starr and Samuel Giffin, and that the one hundred acres situated about this lake occupied a portion of the land under the waters of this pond; that the taxes remained unpaid for the period of two years, and that they were sold by the treasurer and the treasurer's deed made to the persons under whom the plaintiffs in this case claim, you would be justified in finding that the title to this land is in the plaintiffs, and was in the plaintiffs at the time of the alleged trespass.] [4]

[Whether this land was unseated land or not, at the time the taxes were assessed, is a question of fact for you. The deed given in evidence here is prima facie evidence of the plaintiffs' title as against an intruder, but you are to take into consideration all the evidence given in this case as to the condition of this land.] [6]

If, after having conveyed away a considerable portion of these two tracts of land, there was a balance left in one body, and that land was improved, had buildings upon it, or personal property upon it, if there was an occupant of the balance of the tract, by the owner or persons claiming it, of a permanent character, from which the taxes assessed against it might have been collected, then the land was seated, and the plaintiffs cannot recover. But if the land was unseated, if it was unoccupied, then you would be justified in finding that the land was unseated at the time these taxes were assessed.

[It has been admitted here on the part of the plaintiffs that the persons owning land about this lake, and other parties not having land adjoining it, were in the habit of going upon this

land and fishing, boating, skating upon the ice, and using it as people generally use such ponds. If this is the case, it is not sufficient to show that any person, either a person living away from the lake, or having lands adjoining it, had acquired any rights to the land. Whenever a person seeks to set up a right, whether by adverse possession or by prescription, there must be something in the character of his possession, or something in the character of the use which he has made of it, to indicate that he claims not only the right, but that he claims it as against any other person's right.] [7]

If a person takes possession of land with a view of claiming title to it, there must be something in his possession to indicate his denial of other people's rights to that same property. And where people go upon a trout stream to fish as they usually do, or go upon a pond for the purpose of boating and fishing as people usually do, there is nothing in that which denies the right of any other person to do the same thing, and no matter how long that practice may be continued, it never ripens into a right in anybody. . . . .

I have been requested to charge you, by the defendants as follows:

1. That, under all the evidence in the case the plaintiffs have not shown a right to recover in this action.

· Answer: This point is not affirmed.[8]

—The jury returned a verdict for the plaintiffs. Judgment having been entered thereon, the defendants took this appeal, assigning for error:

2. The admission of plaintiffs' offer.[2]

3–7. The parts of the charge embraced in [ ] [3 to 7]

. 8. The answer to defendants' point.[8]

*Mr. A. Ricketts* (with him *Mr. E. C. Newcomb*), for the appellants:

1. Even if the testimony of the surveyors, Lawrence and Smith, could be held to have shown a sufficient location of the Starr and Giffin tracts, as we contend it did not do, it will be observed that there is no evidence whatever of the existence of a tract in the name of Griffin, which is so entirely distinct from Giffin that the principle of idem sonans cannot be pretended to apply. There is as much difference between the

two names as there is between Books and Brooks, Cowell and Crowell, Gay and Gray, etc. For all that appears, we are warranted in saying that there is no tract in Lackawanna county. in the warrantee name of Samuel Griffin. But even if it can be assumed that Griffin meant Giffin, the assessment was invalid, as there is no evidence that any owner of the Starr and Giffin tracts ever treated them as one, or had them surveyed as one tract; and in such case the statute gives no authority to an assessor to assess separate tracts or parts of separate tracts as one tract: Morton v. Harris, 9 W. 319; Brown v. Hays, 66 Pa. 229; Reading v. Finney, 73 Pa. 467.

2. Again, even the testimony for the plaintiffs shows that both those tracts had been seated for many years. But the authority of the treasurer to sell the land depended upon whether, as a fact, it was unseated; and, while the assessment might be prima facie evidence of that fact, it was no more, and its prima facie force was rebutted. The assessment by itself was therefore not evidence in support of the sale : Laird v. Hiester, 24 Pa. 452; McReynolds v. Longenberger, 57 Pa. 13. The court below held that the treasurer's deed was prima facie evidence that the land was unseated. Undoubtedly there have been some statements in our decisions calculated to give undue effect to a treasurer's deed, but a little consideration will show that such a deed, like that of a sheriff, cannot legitimately be evidence of anything, until after the prerequisites, warranting the officer's interference with the title have been shown : Miller v. McCullough, 104 Pa. 624; Williams v. Peyton, 4 Wheat. 77; Thatcher v. Powell, 6 Wheat. 119.

3. The plaintiffs presented no evidence as to when and by whom the tracts conveyed away by the patentees were originally seated, whether by the original owners or by their grantees. Yet the court charged the jury as though it had been shown that the original seating was by the grantees in the deeds, and as though the conveyances of themselves were evidence of that. As to the lake, unconveyed was treated as equivalent to unseated. Again, the court practically declared that the defendants were intruders and that the treasurer's deed sustained the plaintiffs' claim as to them. But if the treasurer's power to sell is not shown, his deed is of no more validity as against an intruder than as against an owner : Mil-

Arguments.

ler v. McCullough, 104 Pa. 624. Moreover, persons like the shoreowners around this pond, who had possession of it as tenants in common for fifty years, using it as water-land is ordinarily used, ceased to be intruders, if they were such originally, and became owners. Such use made the land seated: Altemose v. Hufsmith, 45 Pa. 121. The act of the defendants, in building a boat-house extending beyond the lines of their land and in using it to run boats in, rendered the pond seated even if they were intruders, as this was reducing it to such possession as was convenient and customary: Biddle v. Noble, 68 Pa. 279.

*Mr. George S. Horn* and *Mr. J. W. Carpenter* (with them *Mr. Ward*), for the appellees:

1. The assessment of two contiguous tracts as one, when they are owned by the same person, is an unimportant irregularity, in view of the curative provisions of the act of March 13, 1815, 6 Sm. L. 301: Russel v. Werntz, 24 Pa. 337; Harper v. McKeehan, 3 W. & S. 238. In the present case, the two tracts adjoined each other and were owned by the same persons as tenants in common. The ground covered by the lake was never conveyed, and the ownership of it remained in the patentees or their heirs. The original line between the two tracts was obliterated, so that the assessor could not tell what proportion of the lake was on one of the original tracts, and what on the other, and there was no reason why he should make a division of it which the owners themselves never made. Neither the former owners, nor any one claiming under them, is complaining of the manner of assessing the land, and why should the defendants, who are mere intruders, be allowed to make objection?

2. No objection was made in the court below, upon the ground of the slight variation between the warrantee name of the original tract and the name in which it was assessed. However, there is no merit in the point. The question is one of identity, and if there is enough in the assessment to lead the owner to the truth, he has no right to complain of want of precision: Dunden v. Snodgrass, 18 Pa. 155; Philadelphia v. Miller, 49 Pa. 449. If the defendants, in this instance, had inquired of the county treasurer for a statement of taxes in the

name of either Moses Starr or Samuel Giffin was there not enough to lead them to the truth? The fact that the name was written Griffin, could mislead no one, when it was found in connection with the name of Moses Starr. The question is one of identity, and this question was for the jury. And the fact that the purchasers, immediately after getting their deed took possession of the land in question, claiming to own it, is evidence on the question of identity: Commercial Bank v. Woodside, 14 Pa. 412.

3. In the case last cited, the land was assessed as the property of Thomas Ashburner, returned by the collecter as that of Thomas Asbury and sold as that of Thomas Ashburn. So, in Miller v. Hale, 26 Pa. 432, the assessment was in the name of Philip Darr and the treasurer's deed gave the name as William Darr; and there was a discrepancy in the name of the township. In each case, the question of identity was submitted to the jury. Upon the question of seating, the testimony for the plaintiffs did not show, as the defendants allege, that the land in question was seated; it showed that while portions of the original tracts had become seated, through occupation and cultivation by various persons, the waters of the pond had never been seated. The question was for the jury and they have found that the land sold for taxes was unseated. The treasurer, therefore, had authority to sell it: Laird v. Hiester, 24 Pa. 452. If part of a tract be divided off and sold and the purchaser occupy it, the residue may be sold as unseated: Campbell v. Wilson, 1 W. 503; Harper v. McKeehan, 3 W. & S. 238; Erwin v. Helm, 13 S. & R. 154; Biddle v. Noble, 68 Pa. 279.

4. The defendants sought to show that the land was seated in 1879, by proving that they and all others, not only owners of land bordering on the lake, but all persons in its vicinity, had for many years, whenever they chose to, fished, skated and rowed boats on the lake. But no one claimed any exclusive right, or indeed any right at all, and such repeated acts of trespass would give no right or title: Wheeler v. Winn, 53 Pa. 122; Tinicum Fishing Co. v. Carter, 61 Pa. 39; Baylor v. Decker, 133 Pa. 168; nor would they render the land seated: Wallace v. Scott, 7 W. & S. 249; Jackson v. Stoetzel, 87 Pa. 302; Lackawanna Iron Co. v. Fales, 55 Pa. 90. There is a

Opinion of the Court.

class of cases declaring the law to be, that, as against a mere intruder, a tax deed is title, and gives constructive possession; and it avails nothing that the legal prerequisites cannot be shown: Foster v. McDivit, 9 W. 341; Foust v. Ross, 1 W. & S. 501; Dikeman v. Parrish, 6 Pa. 210; Shearer v. Woodburn, 10 Pa. 512; Troutman v. May, 33 Pa. 455.

OPINION, MR. JUSTICE CLARK:

In this action of trespass, the plaintiffs sought to establish title to the locus in quo under a treasurer's deed for unseated lands.   They exhibited in evidence a patent dated May 1, 1815, from the commonwealth to John Reed and James Gibson, executors, in trust for the use of the heirs of George Clymer, deceased, and Samuel Meredith, for a tract of land in Abington township, Luzerne county, containing 433 acres and 37 perches, and allowance; surveyed in the warrantee name of Moses Starr. Also a patent, dated April 29, 1815, to the same parties, for a tract of land in Abington township, Luzerne county, containing 433 acres, 108 perches, and allowance; surveyed in the warrantee name of Samuel Giffin.   They then gave in evidence a connected draft of these two tracts of land, situate when surveyed in the county of Luzerne, now in the county of Lackawanna, certified from the office of the secretary of internal affairs.   The dates of the original warrants and surveys are not stated in the paper-book.

The plaintiffs followed this by some evidence of the location of these surveys.   The testimony was slight, perhaps, but we are of opinion it was sufficient to establish a prima facie location.   The maple tree from which the surveyor Lawrence started, was a recognized living corner of four different tracts of land, surveyed probably about the years 1784 to 1790.   The tree is marked on four sides, and well-defined straight lines run from it, north, south, east, and west, forming the admitted boundary lines of four original surveys, in the names of the Cadwaladers, Deal, and Upson, and which are now owned and occupied to these lines by the present owners, Fell, Hall, Parker, the Shermans, and the Millers.   The original warrants and surveys were not put in evidence, as they might have been, but it was shown that the Moses Starr adjoined the Cadwalader; and that upon running from the maple, according to the official

survey, as it was known to the surveyor, north 42 west 265.4 rods, he came to the recognized line of the Moses Starr, at a point where two stone walls abutted upon the line. From thence he ran, according to the official draft of the Moses Starr, north 48 east 68 rods, where he set a stake in the public road as the corner of the Moses Starr; and then, returning to the point at the stone walls, he ran in the contrary direction, south 48 west 204.6 rods, according to the draft, to a maple or sugar stub, corner of the Moses Starr, where the call on the official draft is for a sugar. This stub was hollow; it was a mere shell which he could not block and count, but it showed signs in the inside of being a marked tree. When, in running the official courses and distances of the Moses Starr, he came to the shed at the Baptist church, where there should be a corner of the Starr and Giffin, he found an old line, which, as we understand him, represents the division line of these tracts. The surveyor, Lawrence, and Smith, his assistant, from what they saw on the ground and from the boundaries recognized by the present occupants, seemed to be of opinion that this was a proper location of the Starr and Giffin tracts. This testimony, in connection with the old draft and declarations of Thomas Smith, a deceased surveyor, received under objection but not assigned for error, was sufficient, in a case like the present and in the absence of all proof to the contrary, to send the case to the jury on that question.

The plaintiffs then introduced the assessment of unseated lands in North Abington township, Lackawanna county, for the year 1879, among which was, "100 acres, warrantee names, Moses Starr and Samuel Griffin, valuation, $400." The assessment is stated to be "for school purposes," but upon it a six-mill tax of $2.40 was subsequently levied for county purposes for the year 1879; and a treasurer's deed, dated July 12, 1882, recited a sale of the lands, thus assessed and taxed, to the plaintiffs and others, for the tax mentioned. The plaintiffs claim under this deed, in their own right and as lessees of the other grantees named in the deed. The county commissioners had the power to adopt this valuation for county purposes; indeed, in the absence of any valuation by the assessors, the commissioners had the right to adjust a valuation corresponding with the valuation of other unseated lands in the county.

The plaintiffs allege that the lands covered by the treasurer's deed consist of a portion of the Moses Starr and a portion of the Samuel Giffin, which, taken together, constitute a pond or lake known as "Wall Pond" or "Lily Lake." This lake, it is conceded, lies on both sides of the division line between these two tracts as located by Mr. Lawrence, and covers an area of from 80 to 100 acres. The plaintiffs' contention is, that this small lake, or the land upon which it lies, was in the year 1879 what is known as unseated land, and that it was returned by the assessor as such, in the joint names of the respective warrantees; that Samuel Giffin, the name of one of the warrantees, was erroneously given as "Samuel Griffin," but that it was the intention of the assessor to return and assess the land covered by this lake. But the assessment is upon land of which Moses Starr *and* Samuel Griffin were warrantees. The Starr and the Giffin were separate tracts, while the 100 acres is made up of a part of each, and was assessed in their joint names as a single tract. A sale of several tracts of land by the county treasurer, for the payment of taxes, as one tract and for a gross sum, will confer no title upon the purchaser; each tract must be sold separately: Morton v. Harris, 9 W. 319. The whole system of laws on this subject, says Mr. Justice HUSTON, in the case cited, "contemplates an assessment, advertisement, and sale of each tract, and the practice has accorded therewith." See, also, Brown v. Hays, 66 Pa. 229. It is true that the patent for each of the tracts, respectively, was issued to the same persons; but the land in question was not assessed in the name of the patentees, nor in the name of any other person who was in any way associated or connected with the ownership of both tracts; and non constat that both tracts were held as one, or were owned by the same person, at the time of the assessment. It has not been shown that Moses Starr, at any time, had any interest in the Samuel Giffin, or that Samuel Giffin had any interest in the Moses Starr, or that their names were in any way associated or connected with any other than their own tracts respectively. In Harper v. McKeehan, 3 W. & S. 238, and in Russel v. Werntz, 24 Pa. 337, it was held that the assessment of two contiguous tracts of unseated land as one tract, when owned by the same person, was an unimportant irregularity, under the curative provisions of the act of 1815. But,

in those cases, the irregularity consisted merely in uniting separate tracts, owned by the same person, in a single assessment in his name as owner of the whole; while here, separate tracts are united and taxed as one in the joint names of separate warrantees, whose names, a century ago, were severally, but not jointly, connected with the original separate surveys, respectively; and this, coupled with the fact that Giffin is returned as Griffin, amounts to more than a mere irregularity. The description is thereby rendered irregular, inaccurate, and wholly inadequate. There is no evidence upon the face of the assessment sufficient to go to a jury upon the question of identification; in other words, there is no evidence that the lands covered by this lake were assessed at all. A sale for taxes, under these circumstances, is void, and passes no title.

Although the decisions were not formerly to this effect, it is now well settled that the land must in some way be identified, from something appearing in the assessment; and this rests the proof of identification solely upon what is found or once existed in the commissioner's office: Philadelphia v. Miller, 49 Pa. 440; Lyman v. Philadelphia, 56 Pa. 488. In Philadelphia v. Miller, supra, Mr. Justice AGNEW, delivering the opinion of the court, says: "Identity is said to be matter for the jury. Certainly, this is so; but from its very nature the fact of identity is dependent on circumstances which attach themselves to the land. It is because the thing described answers to the circumstances of description we are able to identify it. The evidence of identity is the record which contains the description and fixes the duty. Assessment is, from its legal requirement, and the necessity for preserving its evidence, a written entry, and must depend upon the records of the commissioner's office, and not upon parol testimony, or the private duplicate of the assessor. McCall v. Lorimer, 4 W. 351, 355, is full on this point. . . . . Land is often claimed by adverse owners, and it is not the duty of the tax officers to decide between them. It is sufficient, therefore, if the assessment be in the name of one connected by some title with the land. There is no hardship in this, for owners seldom are ignorant of adverse title." "In short," he concludes, "it seems to me, from a review of the law, and the nature and justice of the thing, it is essential to the validity of the sale that the assessment should afford the

means of identification, either by a description of the land, or by some circumstance, number, or adjoiner associated or connected with it, or by a name connected at some time with a title to the land, good or bad, and that a sale, without description, circumstance, or name, having any known relation to the land, is bad." " If nothing capable of identification," says the same learned judge in Lyman v. Philadelphia, supra, " be returned, what is to be affected? If no discoverable thing be returned, how can anything be sold? It is not irregularity, but the absence of anything to be sold; and, if this subject can be supplied by evidence wholly dehors the assessment, what is to prevent fraud or perjury from applying it to my land or his, as well as to the particular tract for which a suit is brought? The guess can be made in one direction as well as in another." To the same effect are the more recent cases of Glass v. Gilbert, 58 Pa. 266, and Brotherline v. Hammond, 69 Pa. 128.

Lily lake was in 1879, in a small way, perhaps, a summer resort for persons seeking rest, diversion, health, or pleasure. All the land immediately surrounding the lake was in the occupancy of actual residents who owned to the low-water line; in some instances, the lots extended into the lake. A number of hotels had been erected upon the shores, for the accommodation of visitors, who, as guests of the hotels, rowed in boats, fished for pickerel and other fish, and plucked the lilies. The plaintiffs owned one of these hotels, and the defendants another. This fact, taken with the sequel, may perhaps explain why this pond, which for a quarter of a century, at least, does not appear to have been taxed at all, was suddenly supposed to be unseated land, and was returned and taxed as such in this obscure and misleading manner. It was not returned, assessed, or sold as " Wall Pond " or " Lily Lake," by which names it was popularly or generally known, or by any description which was likely to arrest the public attention. Nor was it described by the adjoiners, nor in the name of the patentees, nor in the name of any other person who at any time owned it or was interested in or connected with the title to it, or made claim to it as a connected tract, but in the names of Moses Starr and Samuel Griffin, who (assuming that Griffin was intended for Giffin) were the original warrantees of the several

Syllabus.

separate tracts of which the body of the lake consists.   Moreover, as the land in question was wholly covered by water, was incapable of cultivation, and not adapted to the ordinary and usual methods of residence and settlement, it would seem to us, not only that this circumstance called for a proper description, but for more specific and particular proof as to the nature and extent of the possession taken under the treasurer's deed.   It is shown that the lake was in some sense a public resort, and the plaintiffs do not appear to have been in the actual possession in any way different from others.   As the assessment was, in our opinion, void, it follows that the sale passed no title whatever to the purchasers, and they are not entitled to damages for the alleged trespass.

The judgment is reversed.