## Arthurs *versus* King et al.

1. In an action of ejectment for a tract of land plaintiff claimed by virtue of two tax titles. The defence was that the Christian Lower tract, of which the land in dispute was a part, was seated, and, therefore, not subject to assessment and sale as unseated land. It was claimed that it was seated in consequence of its connection with the Overdorf tract, on which there were improvements, and that in 1852 both tracts were purchased by the same party, with the view of holding and using them together as one tract, for the purpose of carrying on the lumbering business ; that they were so held, used and assessed, and thus the whole became one tract of seated land ; and consequently the subsequent assessment and sale of the Christian Lower tract as unseated was unauthorized and void. It was alleged that the two tracts adjoined, but it appeared that they were so located as to corner together at a certain hickory tree, and that a portion of another tract, in the form of an acute angle terminating at this common hickory corner, separated the two tracts so that they had no boundary line in common, and, therefore, they could not be considered adjoining tracts, but had simply a corner or point without any line common to both. *Held*, that they were not such adjoining tracts as would justify their being treated as one tract, so that the one would be seated by reason of the improvements on the other tract.

2. There is no valid reason why either the owner of land sold for taxes, or a stranger to the title, may not, within the time allowed for redemption, take from the purchaser at treasurer's sale a conveyance of his inceptive title and hold the same until it ripens into a complete tax title. Where, as in this case, the consideration paid is more than would be required to redeem the land, and a regular assignment of the tax title is executed, it would be unreasonable to infer that the transaction is a redemption and not a purchase.

June 14th 1880. Before SHARSWOOD, C. J., MERCUR, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. GORDON, J., absent.

Error to the Court of Common Pleas of *Clearfield county* : Of May Term 1879, No. 8.

Ejectment by Richard Arthurs against Andrew King and Sidney Fuller to recover about ninety acres of land in Brady township, Clearfield county, Pennsylvania, being the northeast corner of tract No. 110, warranted and surveyed in the name of Christian Lower. (See report of this case on former writ of error in 3 Norris 525.— REP.)

These ninety acres are the northeast corner of a tract of land warranted and surveyed to Christian Lower as No. 110, and returned as three hundred and seventy acres. In 1806 a patent was granted by the Commonwealth for the said tract to Elizabeth Holstein and Magdalena Ley. For many years it appeared assessed in the unseated list of lands in Clearfield county to M. Ley's heirs. At the trial, before Orvis, A. L. J., it was admitted that the taxes on

[Arthurs *v.* King.]

tract 110 were regularly paid until 1850, and the title thereto reg-
ularly vested in Henry Zimmerman, of Schuylkill county, who
died on May 18th 1857, leaving a will directing his executor to
sell his real estate.  Arthurs, the plaintiff, claimed the land by vir-
tue of a purchase from Zimmerman's executor, in June 1860.  And
also, under two tax sales, one made in August 1858 to Richard
Shaw, and the other in June 1862 to himself.  Each sale was made
for taxes of the two preceding years.

The defence set up was first, a prior sale made in 1852, by parol
from Henry Zimmerman to David P. Boyer, which title having been
transferred from Boyer to Rouse & Co., and to one Bascom, and the
deed having been executed to Bascom by Zimmerman in February
1854 ; and that Arthurs at or before his purchase having received
notice, or what legally amounted to notice of this title, did not, by
his purchase from Kitzmiller, the executor, obtain such a title as
would be good against Bascom.  Second, that the two tax titles were
invalid because the land was seated.  It was alleged to be seated in
two ways : first, by reason of a small improvement, called the Rei-
singer improvement, along the southern line of tract No. 110 ;
and secondly, on the ground that a tract of about forty-two acres,
called the Overdorf tract, which included an old improvement of
about five or six acres with a log house thereon, constituted, with
No. 110, but one tract, and that the improvement on the Overdorf
part rendered the whole seated.  They do not join or touch each
other, except at a single corner.  Boyer put up a steam saw-mill
and house on the east end of the Overdorf piece, in 1852.

The foregoing facts, together with the assignments of error set
forth below, sufficiently state the case and show the questions raised
and passed upon by this court.  The verdict was for defendants,
and after judgment plaintiff took this writ and alleged that the
court erred, inter alia, as set forth in the following assignments of
error :

3. The court erred in the general charge, in saying :—

" If you find from the evidence, that in 1852, when Dr. Boyer
purchased both of these tracts, he united them for the purpose of a
lumbering establishment ; that he bought them for the purpose of
using them together, that he did so use them as one tract, making
no distinction between them, and afterwards sold them as one tract;
that the purchasers, D. B. Rouse & Co., used them as one tract,
that they were returned for assessment in 1856, in the seated list
as one tract, containing 500 acres, although originally two tracts,
yet this would make them one for the purposes of assessment and
taxation.  The assessors subsequently would have no right to
assess the Christian Lower separate from the Overdorf without the
knowledge and consent of the owner ; and if the Overdorf was
seated, it would have the effect of seating the entire body, and a
sale of the Christian Lower as an unseated tract in 1862, would be

[Arthurs *v.* King.]

invalid and convey no title.    These are our instructions so far as the general principles involved in this case are concerned."

" If you further find that Boyer bought; that he united them and used them together as one tract, treating them as one before any of these taxes were assessed, and that these tracts were returned in 1856 as a single tract and so assessed, the assessor subsequently would have no right to separate them and return the Christian Lower as an unseated tract without the knowledge and consent of the owner, although there was no improvement at the time upon the Christian Lower.

" But it is alleged that from the time Boyer bought these two tracts down until after the commencement of this suit, the owner supposed that the Overdorf ran some distance along the line of the Lower, that they were joined for a distance of some three or four rods.    The owner of the Casper Stiver, an intervening tract, supposed and believed the same thing.    The owners of the Lower and Overdorf tracts cut across the point of the Stiver and hauled timber across there as though it was their land.    The question is not how the tracts were originally located, but how they were occupied and used.    If they were so occupied and used, it would have the effect to make the two tracts one, as much as though they actually adjoined for some distance.    All the parties supposed the Overdorf to lie alongside of the Lower, as appears by the deeds given in evidence, both by plaintiff and defendants.    The deed to Zimmerman; the one from Zimmerman to Bascom, and the one from Kitzmiller, executor, to Arthurs, each recite that the Lower starts at the hickory and runs south along the Overdorf tract.    All the owners and claimants of these lands supposing that these two tracts adjoined for some distance having used and occupied them as though they did, it can now make no difference that it is discovered that according to the official survey they only adjoin at a corner, an acute angle of the ' Casper Stiver ' coming in between them."

6. The court erred in answering the plaintiff's eighth point:—

If the jury believe that the Overdorf survey and the Lower survey, being separate surveys, the Lower survey being made the 2d day of August 1785, the other about the year 1841, are not connected on the ground except as shown by the official drafts at a point at the hickory corner, the northwest corner of the Lower tract No. 110, and that they do not adjoin each other in any other way than is shown by the official drafts, the seating of the Overdorf tract would not seat the Lower tract, No. 110, in any event.

Ans. " We refuse to affirm this point, as we have already instructed you if the parties purchased, united, used and occupied these two tracts together as one, and believed at the time that they joined for some distance, and the owner of the ' Casper Stiver ' never claiming the intervening land, such ownership, use and occu-

[Arthurs *v.* King.]

pation of the Overdorf and Lower tracts as one, would make them one tract for the purposes of taxation, and the improvement of the Overdorf tract would seat the whole."

11. The court erred in answering the plaintiff's thirteenth point:—

If the jury believe that the improvement made upon the west end of the Overdorf tract was not connected with tract No. 110 by any road or passage-way leading from one to the other, it is a strong evidence to rebut the allegation of even using or intending to use both tracts as one, and if they had to pass over tract No. 155, warranted to Casper Stiver, to enter from one tract to the other the seating of the Overdorf tract as shown would not seat the Lower tract.

Ans. "We decline to affirm this point."

13. The court erred in answering the 16th point of plaintiff. If the defendants or Bascom or Boyer owned tract No. 110, and the Overdorf tract, it being seated on the west end, would not make one tract of the two or seat the Lower warrant.

Ans. "That would depend upon circumstances, as we have said to you in our general charge. We refer to what we have said as answering this point."

21. The court erred in answering the defendant's 8th point. That if the defendants, or those under whom they claim, bought, claimed, used and returned for assessment the Overdorf lot and No. 110, as one tract, in contemplation of law they should be regarded as one tract.

Ans. "If you find the facts as stated the law would be so. We submit to you, as a question of fact, whether they did purchase, use, occupy and return for assessment the two tracts as one, as here stated."

2. The court erred in saying to the jury : If you find that the plaintiff, in pursuance of his purchase from Kitzmiller, and claiming to be the owner of this tract, bargained with Richard Shaw for a transfer of the treasurer's deed for the amount necessary to redeem the land from the tax sale, and actually took a transfer of the treasurer's deed before the 18th of July 1860, the time when the right of redemption expired, this would in law be a redemption from that tax sale.

20. The court erred in answering the defendant's 4th point. That if Richard Arthurs, by virtue of his claim of title which he purchased or had contracted for from Kitzmiller, bought the treasurer's title from Shaw before the time for redemption had expired, for the taxes and costs and a nominal excess, it would operate as a redemption and would not sustain a recovery in this case.

Ans. "We have already so instructed you in our general charge ; we therefore affirm this point."

*Richard Arthurs, p. p.,* for plaintiff in error.—The court charged

[Arthurs *v*. King.]

that Boyer purchased those tracts and united them for the purpose of lumbering, but do not say how this could · be done. They say he bought for the purpose of using them together. What does it matter for what purpose if they could not be so used. They further say he did so use them as one tract; but neither court nor jury are informed how he used them; certainly in no other way than in cutting some logs on tract No. 110, and hauling over the point of the Stiver tract, No. 155, to the mill or creek for a short time.

When this case was here before, this court said they had no means of knowing how this land laid. It was a question for the jury. As our tenth point then was too hypothetical and did not leave the question of location to the jury, it is now left to the jury. Besides the Casper Stiver tract, calls for tract No. 110, on the whole western boundary of No. 110, which was overlooked before. It will not be pretended, if there was a piece of wild land owned by one person, and another person had a farm on one side and a wild tract on the other, that he could in any way connect one to the other, so as to make one tract out of two, with another owner between them, even by his consent to use, occupy or cross over his land. The middle owner could turn him out at pleasure, the outside owner would be a tenant at will of the middle man. So in this case, this line runs to a point at the hickory corner. Point has no extension, length or breadth. The Casper Stiver lot stood as a middle man in this case. In this case the defendants did not show title or possession in John DuBois, or that he ever used or allowed the defendants to cross the corner of this Stiver tract.

*Wallace & Krebs* and *Jenks & Clark*, for defendant in error.— Many properties in the state are derived from different sources of title, and are composed of parts of different warrants. After a unity of ownership, it has been common for the owner to subdivide and utterly ignore the old warrant lines. The same farm is not unfrequently composed of parts of different tracts, the cultivation being on one part, and the woodland on another. The principle as enunciated by the court is sustained by the case of Harper *v*. Mechanics' Bank, 7 W. & S. 204, in which ten tracts were assessed together as seated. Most of them were unseated, but others were seated. A sale was made of the unseated tracts and declared void because of the unity of ownership and assessment, the court sustaining the right of the owner to unite several tracts for use and taxation. The case of Larimer *v*. McCall, 4 W. & S. 133, recognises the same principle and denies the right of the assessor to change the assessment without notice to the owner, so as to assess part as seated and the residue as unseated. The same principle by its converse is asserted in the cases of Harper *v*. McKeehan, 3 W. & S. 238, and Russell *v*. Wentz, 12 Harris 338. In these cases different tracts, owned by a common owner, but purchased at differ-

ent times, were assessed and sold as one tract, and the proceeding sustained. See also, Heft *v.* Gephart, 15 P. F. Smith 517: Hole *v.* Rittenhouse, 1 Casey 491; Brown *v.* Day, 28 P. F. Smith 129. But the plaintiff in error claims that the two parts of this tract only touched at a common point, and therefore they could not be properly assessed together. This alleged fact was fully rebutted by the testimony of John DuBois, the owner of the Casper Stiver tract, whose land it is claimed cut off a portion from the Overdorff lot on its southeast side, and thereby forced its lines to a point at a hickory, a common corner of the Overdorff and Lower lots.

Mr. Justice STERRETT delivered the opinion of the court, October 4th 1882.

The land in controversy was claimed by the plaintiff under three separate and distinct titles. One of these was derived from Henry Zimmerman through the deed of his executor, made in June 1860 pursuant to a power of sale contained in his last will and testament; the other two were tax titles, founded on treasurer's sales made respectively in 1858 and 1862.

It was conceded that in 1850 the title to the land was vested in Mr. Zimmerman. This admission, coupled with the power of sale and conveyance by the executor in pursuance thereof, made a clear prima facie case for the plaintiff, but the defendants claimed and introduced testimony to prove that Zimmerman, long before his decease, sold the land to Dr. Boyer, from whom they derived title, and that plaintiff purchased from the executor with full notice of the previous sale. The principles of law involved in this contention were correctly applied by the court, and the questions of fact connected therewith were fairly submitted to the jury. The learned judge, after specially directing attention of the jury to the testimony, instructed them that if the facts were as alleged by defendants no title remained in Zimmerman at the time of his death which his executor could transfer to the plaintiff; that it was therefore an important fact for them to determine whether or not the deed was delivered in the lifetime of Zimmerman; that if he simply made and retained the deed without delivering it to Boyer, or any one for him, it would not have the effect of divesting his title, and either he or his executor might sell the land and make a good title to the purchaser. It appears by their verdict that the finding of the jury on the question thus submitted to them must have been adverse to the plaintiff. It is unnecessary to notice in detail the several assignments of error on this branch of the subject. They neither involve any essential principle that was not sufficiently considered when the case was here on former writs of error, nor do they disclose any just ground of complaint on the part of the plaintiff.

The main ground of defence, common to both tax titles, was that

[Arthurs *v.* King.]

the Christian Lower tract, of which the land in dispute is a part, was *seated* and therefore not subject to assessment and sale as unseated land; and, in support of this position, the defendants made an unsuccessful effort to show that it was seated by reason of the Reisinger improvement, made on or near the southeast corner of the tract sometime prior to the year 1849. They also insisted that it was seated in consequence of its connection with the Overdorf tract, on which there were improvements. They claimed that in 1852 or thereabouts, both tracts were purchased by the same party with the view of holding and using them together as one tract, for the purpose of carrying on the lumber business; that they were so held, used and assessed, and thus the whole became one tract of seated land; and consequently the subsequent assessment and sale of the Christian Lower tract as unseated was unauthorized and void. The learned judge instructed the jury, in substance, that this was so if they found the facts to be as claimed by the defendants. In this we think there was error. It was clearly shown that the tracts were not adjoining, and there was no competent or sufficient testimony to justify the jury in finding otherwise. When the case was here on former writ of error, it appeared to be a question of fact under the testimony then before the court, whether the Lower and Overdorf tracts did not adjoin at least for a short distance southerly from the hickory, which was admitted to be the common corner of both; but, from the connected drafts of the original surveys of the two tracts and the Casper Stiver tract, together with the testimony of witnesses introduced on the last trial, it clearly and conclusively appears that the three tracts are so located as to corner together at the hickory; that a portion of the Casper Stiver tract, in the form of an acute angle, terminating at the common hickory corner, separates the other two tracts so that they have no boundary-line in common, and therefore cannot be considered adjoining tracts. They have simply a corner or point without any line common to both. The learned judge, in his charge, says: " It would appear that the old surveys were made in March 1785. The Christian Lower and Casper Stiver cornered at a common point, a hickory. These two tracts were located the same year; the Lower some days earlier than the Stiver. The Edward Overdorf was not located until 1841. It seems to have cornered upon the same hickory, so that, according to the original survey, the Lower and Overdorf tracts only united at a common corner at the point where the hickory stood." The facts thus stated fully accord with the uncontradicted testimony in the case, and clearly entitled the plaintiff to at least an unqualified affirmance of his eighth, thirteenth and sixteenth points. There was no conflicting testimony as to the original location and relative position of lines of the three original surveys, as shown on the corrected drafts, nor was there any competent testimony to show that these lines were ever changed,

[Arthurs *v.* King.]

or that the owners of either the Lower or Overdorf tracts ever acquired title by purchase, possession or in any other legitimate way, to the point of the Stiver tract which separates the two first-named tracts. The third, sixth, eleventh, thirteenth and twenty-first assignments of error are sustained.

In view of the testimony, there was also error in that part of the charge embraced in the second assignment; and in the answer to the defendant's fourth point, which is the subject of complaint in the twentieth specification of error. The deed from Zimmerman's executor to the plaintiff is dated and acknowledged June 11th 1860, and the evidence is, that on the same day he procured from Richard Shaw an assignment of his inchoate tax title. There is nothing in the testimony to indicate that this was intended as a redemption of the land from the tax sale, nor does it follow as a matter of law that it was a redemption and not an acquisition of the tax title. There is no valid reason why either the owner of land sold for taxes, or a stranger to the title, may not, within the time allowed for redemption, take from the purchaser at treasurer's sale a conveyance of his inceptive title, and hold the same until it ripens into a complete tax title. Where, as in this case, the consideration paid is more than would be required to redeem the land, and a regular assignment of the tax title is executed, it would be unreasonable to infer that the transaction is a redemption and not a purchase.

There appears to be nothing in any of the assignments of error that calls for further notice.

Judgment reversed, and a *venire facias de novo* awarded.