Hunter, Appellant, *v.* McKlveen, Prothonotary, et al.

480

Argued March 21, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Calvin E. Pollins*, with him *John W. Pollins* and *Pollins & Pollins*, for appellant.

*Dan V. Crowell*, with him *Vincent E. Williams*, County Solicitor, *Chas. C. Crowell* and *Crowell & Whitehead*, for appellees.

OPINION BY MR. JUSTICE DREW, April 11, 1949:

The Pennsylvania Turnpike Commission, under authority of the Act of May 21, 1937, P. L. 774, on October 10, 1938, condemned certain lands in Cook and Donegal Townships, Westmoreland County, for a right of way. As a result of this condemnation, proceedings were begun by the Turnpike Commission in the Court of Common Pleas of Westmoreland County, August Term, 1939, to assess damages to the owners of the lands, alleging them to be James S. Blair et al. (hereinafter referred to as the Blairs). Because of prior tax sales of that land, the Turnpike Commission interpleaded the county, and the county commissioners filed a disclaimer. A special verdict of $16,400 was rendered and that amount was paid into court by the Turnpike Commission.

Plaintiff, an owner of real estate and taxpayer in Westmoreland County, filed the present bill in equity against defendants, John H. McKlveen, Prothonotary of Westmoreland County, the county commissioners of

that county and the Blairs, to compel McKlveen to pay the $16,400 to the county, rather than to the Blairs. Preliminary objections to this bill were sustained by the learned court below and on appeal this Court held that since county officers cannot give away public property without authorization, the disclaimer filed by the county commissioners was of no effect. The decision of the court below was, therefore, reversed and the case remanded with a procedendo: *Hunter v. McKlveen*, 353 Pa. 357, 45 A. 2d 222. After the taking of testimony, the chancellor entered a decree dismissing the bill and ordering the fund to be paid to the Blairs. That decree was made final by the court en banc and plaintiff again appealed.

The following facts were found by the learned chancellor: The Blairs owned approximately 6794 acres of land in Westmoreland County. That land, which was in part seated, was composed of 54 tracts but was assessed by the county as four tracts of unseated land described as follows: "5875 acres Kregar out on the location of boundary of property" and assessed in the name of the Blairs individually and the Indian Creek Lumber Co.; "224 acres brush" in the name of Blair Lumber Co.; "429 acres of land" and "370 acres of land", both in the name of James and David Blair Co. The Blairs made a bona fide effort to keep all taxes paid and on one occasion, in October of 1936, they left a blank check with the county treasurer which the latter filled out for what he said was the full amount of taxes then due. In June 1938, the land was sold to the county commissioners for delinquent taxes for the years 1931, 1932, 1935, and 1936. In December 1938, the county treasurer, on the Blairs' application, set up a five year installment plan for the payment of the delinquent taxes under the Tax Abatement Act of October 25, 1938, P. L. 84. Final payment was made under that plan on February 4, 1942, at which time the tax deeds were returned to the Blairs.

On March 3, 1939, the Secretary of Highways approved a map in which the specific boundaries for the right of way of the Turnpike through Westmoreland County were fixed, and, as a result, 61.3 acres of the Blairs' land was condemned. It is for the appropriation of that land that the jury awarded the $16,400 here in dispute. The question determinative of this case is: Who was the owner of that property at the time of its condemnation? That in turn depends upon whether the tax sale validly passed title to the county and if so whether the Blairs redeemed the land in accordance with the Tax Abatement Act of 1938.

It is the well-settled rule of this Commonwealth that no tax sale of land is valid unless both the assessment and the conveyance by the treasurer contain sufficient descriptions to identify and disclose the property taxed and sold: *Fisk v. Corey*, 141 Pa. 334, 21 A. 594; *Lyman v. Philadelphia*, 56 Pa. 488; *Phila. v. Miller*, 49 Pa. 440. It is not necessary that the descriptions be by metes and bounds, but the land must be so identified that the owner, the collector, and the public can determine what property is being assessed or sold: *Norris v. Delaware, L. & W. R. R. Co.*, 218 Pa. 88, 66 A. 1122. Obviously, those requirements have not been met in the instant case.

The assessment rolls reveal that the sole means of identifying this land is by the name of the owners. However, some of the land was assessed in the name of the Blairs and the Indianhead Lumber Company, a defunct organization; other tracts were assessed in the name of the Blair Lumber Company; and still others in the name of James and David Blair Company both of which companies are non-existent. As to the adequacy of identification of real estate by a name other than the true owner, this Court, speaking through Mr. Justice PATTERSON, stated in *Humphrey v. Clark*, 359 Pa. 250, 58 A. 2d 836: "Whether an assessment identifying a property by a name other than that of the true owner is sufficient must necessarily depend upon numerous facts

and circumstances. Important factors in such determination are the nature of the land conveyed, whether rural or urban, and whether there are other lands in the immediate vicinity owned by the same person." After a careful examination of the evidence here presented, it is clear that the facts and circumstances of this case in no way aid in the identification of the land. They show only the complete confusion that exists in the tax records of Westmoreland County.

The Blairs owned 54 tracts of land, about five of which were seated. Many of these tracts were contiguous but some were not. Nevertheless, that land was all lumped together and assessed as four tracts of unseated land. Nowhere does it appear in what manner the 54 tracts were grouped by the assessors to produce the four tracts. Descriptions such as "224 acres brush" and "370 acres of land" are of no aid in determining which of the tracts are included in those assessments. The same tract could be made part of several assessments and the taxpayer would have no means of apprising himself of that fact. That is borne out by the chancellor's finding that the Blairs owned approximately 6794 acres of land in Westmoreland County and the assessments totaled 6889 acres. It is clear from those figures that the County's method of assessment resulted in double taxation of at least part of the land. Furthermore, a purchaser at a tax sale could not know, nor could he learn, the exact boundaries of his purchase. The assessments completely failed to identify the land. That being so, the assessments were void. Since the validity of a tax sale is necessarily dependent on a valid assessment (*Humphrey v. Clark*, supra), the sale is also void and no interest passed to the county as a result of it.

Not only were the assessments invalid, but the deeds were also insufficient to pass title. The following are representative of the descriptions found in the deeds: 420 acres in Cook Township; a tract containing timber in Donegal Township; "one half of 224 A brush" in

Donegal Township. Such deeds describe nothing and convey nothing. The properties were located solely by the name of the township. Most of them did not even state the acreage and those that did contained nothing further to identify the land. "One half of 224 A brush" gives no clue as to which half was conveyed, even assuming that the whole tract could be identified. The deeds which the county commissioners received were worthless and could not serve to divest the Blairs' title.

It is evident that when the county commissioners disclaimed in the former proceedings, they were convinced there were no taxes due on this land. The chancellor found "the Blairs made a bona fide effort to keep all taxes paid." It was not disputed that since 1907, when the larger portion of the Blairs' land was acquired, the Blairs have paid $65,649.31 in taxes.

Since, for the above reasons, the attempted tax sale was of no effect, title at all times remained in the Blairs and they alone are entitled to the damages for the appropriation of land by the Turnpike Commission. In this view of the case, it is unnecessary to discuss the other questions raised by appellant.

Decree affirmed. Costs to be paid by appellant.