Bannard et al., Appellants, *v.* New York State Natural Gas Corporation.

240

Argued April 27, 1971. Before Bell, C. J., Jones, Eagen, O'Brien, Roberts, Pomeroy and Barbieri, JJ.

*Francis J. Carey, Jr.,* with him *Ralph N. Teeters, John C. Tuten, Jr., Robert V. Maine, Townsend, Elliott & Munson,* and *Maine and Fennell,* for appellant.

*Leroy F. Perry,* with him *F. Cortez Bell, Jr., David E. Weatherwax, Edward T. Kelley,* and *Bell, Silberblatt and Swoope,* for appellees.

OPINION BY MR. JUSTICE POMEROY, June 28, 1972:

Appellants, the heirs of Charles Blanchard ("the heirs"), brought this action in ejectment against the New York State Natural Gas Corporation ("Gas Company")[1] to gain possession of a 153-acre oil, gas, and mineral tract. The Gas Company's lessor, the Pennsylvania Game Commission, intervened as a defendant. Judgment was rendered in favor of defendants,[2] and this appeal followed. For reasons which follow, we affirm.

The facts are complicated and must be set forth in some detail. Charles Blanchard died on July 23, 1885,

---

[1] The correct corporate name of the Gas Company, resulting from a merger and change of name which have occurred since the inception of the litigation, is now Consolidated Gas Supply Corporation, a West Virginia corporation qualified to do business in Pennsylvania.

[2] To date this case has been in our court system for over 12 years. Part of the time was consumed by a jurisdictional dispute ultimately decided by this Court in 1961, see *Bannard v. New York State Natural Gas Corporation,* 404 Pa. 269, 172 A. 2d 306.

leaving a will which directed his executors to sell his real estate. At one time, Blanchard had owned all the land in Warrant 1990 in addition to many other tracts in Union Township, Clearfield County. Prior to 1885, he conveyed away, without reserving any mineral rights, four contiguous parcels occupying most of the western part of Warrant 1990.[3] At the time of his death Blanchard still owned all remaining tracts in the Warrant. In 1899 Blanchard's surviving executor, Henry B. Neely, conveyed 46 acres of land to Amos Kline ("Kline tract"), 80 acres to Kline and Stephen Wing ("Kline and Wing tract"), of which only approximately 30 acres were located in Warrant 1990, and 153 acres, the tract here in issue, to David Johnston ("Johnston tract").[4] In each of these three conveyances the grantor reserved the coal, fire-clay, oil, gas and other mineral rights. Pursuant to a 1904 order of the Orphans' Court of Philadelphia County directing the executor to divest the estate of its remaining property, Neely conveyed the mineral rights in the Johnston tract,[5] the Kline

---

[3] These tracts are commonly referred to as the John Dressler, Levi Dressler, Salome Dale and George Bowersox tracts.

[4] Following the metes and bounds description, the deed to Johnston continued with the following recital: ". . . containing about one hundred and fifty-three acres, more or less, being known as the Blanchard farm, and being a portion of sub-division Nos. 11, 12 and 13 of the Ross Survey of 1860, and a part of warrant 1990."

Some confusion appears in the record as to whether the name of the vendee was David Johnston or David Johnson. The 1899 deed gives it as "Johnston", but at least two later conveyances of the same tract refer to the vendor as "Johnson". Since no problem of identification is involved by reason of the variant spellings, we will refer to the vendee throughout as "Johnston".

[5] This was accomplished by a deed dated December 10, 1904, item 6 of which covered the Johnston tract, referred to therein as "The Old Blanchard farm, now David Johnson", and giving the acreage as "one hundred and fifty-three Acres, more or less."

tract and the Kline and Wing tract to the Commonwealth Title Insurance and Trust Company of Philadelphia ("Title Company").[6]

The 153-acre Johnston tract, also known as the Blanchard farm, had been assessed by Union Township and Clearfield County to Charles Blanchard on the seated list since 1883, first as 100 acres, and commencing in 1895 as 130 acres.[7] In 1900, one year after the sale of the surface tract to Johnston, Blanchard was assessed for 130 acres of minerals, and Johnston was assessed for the surface, both on the seated list. The 1901 seated list indicated that the 130-acre mineral assessment had been transferred to the unseated list but no such assessment ever appeared there. In 1904, 306 mineral acres in Warrant 1990 (which, appellant contends, included the 153 acres comprising the Johnston tract) appeared on the unseated list, in addition to the 187 acres owned in complete fee by Blanchard in Warrant 1990. This entry remained the same in the triennial assessments of 1907 and 1910. Johnston continued to be assessed on

---

[6] The conveyances made by the 1904 deed, although not so indicated in the deed, were in trust for the heirs of Charles Blanchard. As appears from another deed of record in 1957, the Title Company executed a declaration of trust subsequent to receiving the deed of December 10, 1904, which declaration in turn referred to a trust agreement between the Title Company and the heirs entered into in 1903. The equitable interest of the Blanchard heirs pursuant to these instruments is not in dispute.

To comply fully with the 1904 court order, Neely also conveyed to the Title Company without reservation or exception what later became known as the C. G. Schwen, C. G. Bailey (two), and J. N. Booze tracts consisting of approximately 88, 84, 19 and 44 acres, respectively.

[7] In Pennsylvania, the tax assessor prepares both a seated and an unseated list. An assessment should be returned on the seated list if it has been permanently improved whereas an unimproved tract is generally considered unseated. This distinction and the consequences of an improper classification are explored later in the text.

the seated list for 130 acres of surface until 1910 when the acreage was increased to 153. Commencing in 1911 and continuing through 1915, after Johnston's surface assessment was increased to 153, 153 acres of minerals were assessed to the Blanchard Estate on the seated list.

In 1912, the 306 mineral acres on the unseated list were sold by Treasurer's deed to the County Commissioners of Clearfield County for unpaid 1910 and 1911 taxes owed by the Blanchard Estate. In 1916 the 153-acre mineral tract assessed on the seated list, then in the name of the Blanchard Estate, was likewise sold by Treasurer's deed to the County Commissioners for non-payment of 1913 and 1914 taxes.[8]

The appellee Game Commission traces its ownership of the mineral tract in question from the 1916 tax sale. To support its claim, the following deeds were introduced into evidence in the lower court: (1) a 1918 deed from Johnston to one Zack Marsh transferring the surface 153 acres; (2) a 1919 Commissioner's deed to Marsh for the mineral rights to the 153-acre tract, thus effecting a merger of the surface and mineral titles; (3) a 1935 sheriff's deed (presumably covering the entire fee interest of Zack Marsh pursuant to foreclosure) to the DuBois National Bank with no reservations or exceptions; (4) a 1943 deed from the DuBois National Bank to one Hugh K. Korb; and (5) a 1945 deed from Korb to the Commonwealth of Pennsylvania for use of the Game Commission. Subsequently, in 1957, a lease for the mineral rights was executed between the Game Commission as lessor and appellee Gas Company as lessee.

---

[8] The deed description was of "a certain piece of Real Estate consisting of 153 acres mineral right situate in the Township of Union, purporting to be owned by and assessed in the name of Chas. Blanchard, Est."

To validate his claim to the Johnston tract, appellant[9] offers alternate chains of title. He first traces the property from Blanchard through the Title Company in 1904, as trustee, then by deed dated September 6, 1957 from the Provident Tradesmens Bank and Trust Company (successor in interest by merger to the Title Company) to the named plaintiffs. To support this chain, he argues that for several reasons to be examined the 1916 tax sale was invalid and did not divest the title of the Title Company, and consequently of the Blanchard heirs, to the tract. In the alternative, appellant argues that even if the 1916 tax sale were not defective for the several reasons asserted, it was nevertheless a nullity because the property had been previously transferred to his predecessor in title by the 1912 sale of 306 mineral acres.[10] He contends that the Johnston tract was included in the 306 mineral acre assessment in Warrant 1990, which served as the basis for that transaction.

With these facts in perspective, it is clear that the two questions presented for our determination are the validity[11] of the 1912 and 1916 tax sales. Were we to

[9] The parties agreed that only one appeal would be taken by one plaintiff (one of the Blanchard heirs) and that all plaintiffs would be bound by the result. Accordingly, as in the briefs of the parties, plaintiffs are referred to in the plural, but appellant in the singular.

[10] Appellant contends that whatever was covered by the 306-acre mineral assessment was sold at the 1912 Commissioners' sale to Stine and Woolridge; that in 1932 this land was conveyed to the Commissioners by a Treasurer's deed, and in 1946 was conveyed by Commissioner's deed to John E. DuBois; and that further intra-family conveyances preceded a 1947 deed to the Green Glen Corporation which in 1957 executed and delivered a quitclaim deed to the Blanchard heirs.

[11] Our use throughout this opinion of the words "validity" and "invalidity" and related terms is intended to include two closely related concepts. On the one hand, they refer to compliance with

find the earlier sale valid, the later one would be necessarily invalid, since there would have been nothing to sell in 1916. (In that case, the appellees' challenge to the alternate chain of title would have to be scrutinized.)[12] On the other hand, invalidity of the earlier sale does not automatically validate the later one. If it too were found ineffective to convey the tract in question, appellant would prevail, for his 1957 deed from the Title Company's successor is not contested. As indicated above, we hold both that the 1916 sale was valid, and that the 1912 sale was invalid, and that therefore the lower court's decision in favor of appellees was correct. For convenience we deal with the two sales in that order.

## I.

Appellant, representing the Blanchard heirs, makes three separate attacks on appellee's title emanating from the 1916 tax sale of 153 mineral acres: (1) that the assessment and deed did not adequately identify the land in question as the Johnston tract; (2) that oil and gas were not included in the assessment and deed; and (3) that the assessment was invalid because it was not in the name of the true owner.

(1) As to identification, "It is the well settled rule of this Commonwealth that no tax sale of land is valid unless both the assessment and the conveyance by the treasurer contain sufficient descriptions to identify and disclose the property taxed and sold. Fisk v. Corey, 141 Pa. 334, 21 A. 594; Lyman v. Philadelphia,

---

the statutory requirements for a tax sale; on the other hand, they encompass the effectiveness of a particular tax sale to convey a specific tract of land.

[12] Appellees have challenged this chain on the grounds that the execution and delivery of a valid Treasurer's deed are essential to a valid tax sale, and that because appellant was unable to produce the 1932 deed, his title was defective. We do not reach consideration of this argument.

56 Pa. 488; Phila. v. Miller, 49 Pa. 440. It is not necessary that the descriptions be by metes and bounds, but the land must be so identified that the owner, the collector, and the public can determine what property is being assessed or sold: Norris v. Delaware, L. & W. R. R. Co., 218 Pa. 88, 66 A. 1122." *Hunter v. Mc-Klveen,* 361 Pa. 479, 482, 65 A. 2d 366 (1949). Accord, *Boulton v. Starck,* 369 Pa. 45, 85 A. 2d 17 (1951).

The assessment on the seated list and the Treasurer's deed referred to the property in similar language; if one fails for vagueness, they both must fail. The annual seated assessment of Union Township for the year 1911 shows "153 mineral—Blanchard Charles Est." On the assessment form the second column from the left, after the date column, is captioned "Acres Perches". In succeeding years, "153 mineral", which appeared under this heading, was shortened to "153 min". Appellant's characterization of the assessment as "153 min" is thus taken out of context. When viewed in light of the 1911 assessment and the column caption, the clear meaning is that it was 153 mineral acres that were being assessed to the Blanchard Estate. The 1916 Treasurer's deed described the land as "153 acres mineral right situate in the township of Union, purporting to be owned by and assessed in the name of Chas. Blanchard Est."

We do not accept appellant's contention that the 153 mineral acres described are not distinguishable from the 20,000 other acres in Union Township, or from the many other parcels in the Township then owned by Blanchard or his estate. The 1904 deed from the estate to the Title Company purported to convey all of Blanchard's land or interests in land not previously conveyed in Clearfield County. In that deed twelve parcels were described, only some of which were located in Warrant 1990. The sixth paragraph of the

deed described the "Old Blanchard Farm, now David Johnson", in Warrant 1990 and containing 153 acres more or less. It thus seems clear that the Johnston tract was sufficiently identified; it was the only one of that size owned by the estate in all of Clearfield County.

The cases cited by appellant are either readily distinguishable on their facts or give more support to the appellees' position than to his own. In *Boulton v. Starck*, 369 Pa. 45, 85 A. 2d 17 (1951), the assessment description "169 A Coal Rt. and 70 A. Coal Rt." would have been "obviously insufficient" (the Court's words, 369 Pa. 51), but because the property was assessed to a particular named person, as was done here, the defect was remedied. See also *Hess v. Westerwick*, 366 Pa. 90, 76 A. 2d 745 (1950). In *Hunter v. McKlveen, supra,* "224 acres brush" and "370 acres of land" were held not to pass muster because identification was impossible. As the court explained: "The Blairs owned 54 tracts of land, about five of which were seated. Many of these tracts were contiguous, but some were not. Nevertheless, that land was all lumped together and assessed as four tracts of unseated land. Nowhere does it appear in what manner the 54 tracts were grouped by the assessors to produce the four tracts. Descriptions such as '224 acres brush' and '370 acres of land' are of no aid in determining which of the tracts are included in those assessments. The same tract could be made part of several assessments and the taxpayer would have no means of apprising himself of that fact. . . ." 361 Pa. at 483. Similarly, "lot near Baltimore Avenue, N. Penn Street . . . assessed in the name of John Morgan" was held "wholly inadequate" in *Sarous v. Morgan,* 171 Pa. Superior Ct. 165, 90 A. 2d 353 (1952), because the taxpayer had several lots answering that description. In the instant case, in contrast,

no tracts were combined, nor has appellant demonstrated that the Blanchard estate or anyone else owned more than the one 153-acre mineral tract here involved.

In *Wilson v. A. Cook Sons Co.*, 298 Pa. 85, 148 Atl. 63 (1929), the unseated tax assessment for the years 1892 and 1893 was against "Lowry, W. H. (Heirs) Mineral". The court held this to be a permissible description, for "mineral" distinctly described the reserved estate, and the property was known in the community as the "Lowry Land". We have difficulty distinguishing the present case.

That there was in fact no substantial identity question as to the 153-acre tract is illustrated by the acquisitions of Zack Marsh in 1918 and 1919, above referred to. Having purchased the surface estate from David Johnston in the former year, he bought the mineral rights to the same tract from the County Commissioners the latter year. It is unlikely that this would have occurred had not the Johnston tract been identifiable from the Treasurer's deed to the Commissioners in 1916 (see footnote 8).

(2) Appellant contends that because both the Treasurer's deed and its underlying assessment referred only to minerals, no oil and gas rights could be conveyed by the 1916 sale. The 1899 deed from Neely to Johnston excepted and reserved all the coal, fire-clay, oil, gas and other minerals. Neely's 1904 deed to the Title Company conveyed only "mineral rights", but that indenture's expressed purpose was to divest the estate of all remaining property pursuant to court decree. It is conceded by appellant that this deed was adequate to convey to the Title Company all oil and gas rights, and was not limited to "hard minerals". The issue, therefore, is whether the tax assessment and subsequent sale based thereon encompassed less than the Title Company's full mineral ownership, thus leaving it with

the residuary oil and gas rights. We hold that the Treasurer's deed did pass the oil and gas rights.

In a normal conveyance between private parties, whether use of the term "minerals" includes or excludes oil and natural gas depends upon application of the rule laid down in *Dunham & Shortt v. Kirkpatrick,* 101 Pa. 36 (1882), recently reviewed by this Court in *Highland v. Commonwealth,* 400 Pa. 261, 276, 161 A. 2d 390 (1960): "This decision [*Dunham*] established a rule of property . . . upon which the validity of many titles has long since rested. The Dunham rule . . . is based upon the popular conception of the meaning of the word 'minerals'. The rule may be briefly stated: if, in connection with a conveyance of land, there is a reservation or an exception of 'minerals' without any specific mention of natural gas or oil, a presumption, rebuttable in nature, arises that the word 'minerals' was not intended by the parties to include natural gas or oil: Dunham & Shortt v. Kirkpatrick, supra; Silver v. Bush, supra; Preston et al. v. South Penn Oil Company et al., 238 Pa. 301, 86 A. 203; Bundy v. Myers, 372 Pa. 583, 94 A. 2d 724."

In a tax sale, however, the presumption does not obtain: the deed is based on the assessment and conveys the interests in land which are properly included within the assessment. This was clearly established by our decision in *Wilson v. A. Cook Sons Co., supra.* In that case, as here, the taxpayer's ownership of minerals admittedly included oil and gas; the assessment of his interest was of "minerals" only. Taxes became delinquent, and a tax sale was held. The County Treasurer's deed to the purchaser conveyed only "minerals". Later the taxpayer claimed that the tax sale had not covered oil and gas. The court held otherwise. Because we consider this case controlling on this phase of the case, we quote at length from the opinion of Mr. Justice (later Chief Justice) FRAZER: "[Wilson] now contends

the assessment and sale of 'minerals did not pass title to the oil and gas.' On the tax duplicates and in the tax books of the county, plaintiff's reserved estate is described as 'mineral', and he argues this term so used 'did not cover oil and gas' underlying the surface, and sets forth in his first assignment of error that the court was in error in its conclusion that the assessment of the 'mineral' included the oil and gas and that the treasurer's sale passed to the purchaser and to his successors a good title to such property. . . . There was undoubtedly a separate estate here created in plaintiff of the underlying minerals, and we have frequently held that oil and gas are minerals (Marshall v. Mellon, 179 Pa. 371; Chartiers Block Coal Co. v. Mellon, 152 Pa. 286) ; and like all minerals, they necessarily belong to the owner of the fee or his grantee, the former having an ownership which he can sell and convey: Hamilton v. Foster, 272 Pa. 95. The reservation in the present case was distinct and comprehensive in its terms and plain as to intent. What we said in Rockwell v. Warren Co., 228 Pa. 430, 431, is conclusively appropriate to this controversy: 'A mere license to mine coal or to drill for oil and gas, unaccompanied by the right of ownership in the minerals underlying the surface, does not constitute an estate in land. On the other hand, oil, gas and coal are minerals, and when the title to the same is severed from the owner of the surface and vested in a separate owner, an estate in land is thus created, which, if it be of any value, may be taxed. . . . It is just as well settled that each separate estate is subject to valuation and assessment as land' (See also DeWitt's Est., 266 Pa. 548) ; and where there is a divided ownership of the land there ought to be a divided taxation: Logan v. Washington Co., 29 Pa. 373; Sanderson v. Scranton, 105 Pa. 469." 298 Pa. 89-91. *New York State Natural Gas Corp. v. Swan-Finch Gas Develop-*

*ment Corp.,* 278 F. 2d 577 (3rd Cir. 1960), relied on by appellant, is distinguishable. Applying Pennsylvania law in a diversity suit, the federal court there held not that natural gas rights could not be assessed as minerals, but rather that the owner of these rights in certain circumstances was under no obligation to volunteer an assessment. Consequently, it was held under the particular facts there presented that a subsequent assessment to the wrong owner followed by a tax sale could not divest the true owner of his rights.

Appellant further argues that even though a taxing body purports to assess an entire mineral estate, only minerals known to exist at the time and place are actually valued by the assesors, taxed and later sold if taxes become delinquent. Acceptance of this proposition would undoubtedly lead to confusion and speculation, for no one would know what had actually been sold. Attempts to prove that assessors did or did not know of the presence of oil or gas when they assessed "minerals" at some point in the past would lead to protracted collateral investigation and litigation. It is true, of course, that an assessor can tax only that which has value. *Rockwell v. Warren County,* 228 Pa. 430, 77 Atl. 665 (1910) ; if no gas or oil exists, the mineral rights should not be taxed as if they did. Nevertheless, an assessment or sale believed to be improper because of overvaluation cannot be collaterally attacked fifty years later. The owner must petition immediately for exoneration. *Wilson v. A. Cook Sons Co.,* 298 Pa. 85, *supra,* at 92. Even if such prompt action had been taken here, there is no suggestion that it would have succeeded; appellant does not argue that there is in fact no gas or oil in the Johnston tract. We thus reject these grounds for attack on the validity of the assessment here involved.

It is basic law that a purchaser at a tax sale acquires only that which is assessed. This is true whether the land or estate being sold is seated or unseated. *Miller v. McCullough,* 104 Pa. 624 (1884) ; *Brundred v. Egbert,* 164 Pa. 615, 30 Atl. 503 (1894). Because, as we hold, the 1913 and 1914 assessments of "153 min Blanchard Chas. Est." included oil and gas, it follows that the 1916 tax deed from the Treasurer to the County Commissioners effectively transferred those rights in the Johnston tract.

(3) Appellant's final contention as to the invalidity of the 1916 sale pertains to an error in the assessment as to the record owners of the Johnston tract. The assessment of the 153 acres of minerals had been in the name of the "Blanchard Estate" since 1911. Thus neither the legal title owner of record (the Title Company) nor the undisclosed equitable owners (the heirs of Charles Blanchard) were identified by the 1913 and 1914 assessments. Appellant argues, therefore, that these assessments could not serve as the basis for the 1916 tax sale.

The name "Blanchard Estate" might be quite accurate to refer to the equitable interest of the heirs of Charles Blanchard after the conveyance to the Title Company in 1904 as well as before, except that their interest was not a matter of record. This, however, is unimportant. What is important is to determine whether or not the property sold was properly to be considered seated or unseated. If unseated, it is immaterial that the name of the owner as given in the assessment is inaccurate, since no personal liability is involved; the land, not the owner, is looked to for payment of delinquent taxes. As the Court said in *Franklin Coal Co. v. Bertels,* 109 Pa. 550, 553-4 (1885), "When unseated land subject to taxation is sold, the title of the real owner passes to the purchaser, in whatever name it be

assessed and sold, even if the person in whose name it was sold has not title thereto: Strauch v. Shoemaker, 1 W.&S., 166." See also *Auman v. Hough,* 31 Pa. Superior Ct. 337, 346 (1906). The only limitation on this rule has been that the person assessed, even though not the true owner, must in some way have been connected with, or had his name associated with, the land. *Bachop v. Critchlow,* 142 Pa. 518, 21 Atl. 984 (1891) ; *Fisk v. Corey,* 141 Pa. 334, 21 Atl. 594 (1891) ; *Lyman v. Philadelphia,* 56 Pa. 488 (1868) ; *Philadelphia v. Miller,* 49 Pa. 440 (1865) ; *Gordon v. Harley,* 165 Pa. Superior Ct. 433, 68 A. 2d 439 (1949). There can be no doubt that the "Blanchard Estate" had such a connection with the tract in question.

This brings us, then, to a consideration of the primarily factual question whether the mineral estate here involved was properly to be considered unseated, notwithstanding the assessor's classification as seated. We find that it was.

As recited above, the mineral estate in question was severed from the surface estate in 1899 by the deed to Johnston, and it thereupon became subject to separate taxation. *Hutchinson v. Kline,* 199 Pa. 564, 569, 49 Atl. 312 (1901). No improvements were made to the mineral tract, however, until 1957, when appellee gas company drilled its gas well. It therefore remained unseated land throughout this period, and should have been assessed for tax purposes as such. As the Court put it in *Stoetzel v. Jackson,* 105 Pa. 562, 567 (1884), "[W]hether a tract of land is seated or unseated depends altogether upon what has been, or is being done upon it; upon the appearance which it may present to the eye of the assessor. . . . [T]he assessor has nothing to do with the misapprehensions or mistakes of the occupant; it is his business to return the land as seated if he finds upon it such permanent improvemenst as indicate a personal

responsibility for its taxes. On the other hand, if there be no such improvements he must return it as unseated. Neither is it the business of the assessor to inquire how the improver holds the property . . . for the question is but how the taxes shall be collected: if seated, then from some person; but if unseated, from the land itself." See also *Everhart v. Dolph,* 133 Pa. 628, 642, 19 Atl. 431 (1890) ; *Northumberland County v. Phila. & Reading Coal & Iron Co.,* 131 F. 2d 562, 566 (C.A. 3d Cir., 1942).

Before the assessor can make his return relative to unseated land, however, there must be a preceding affirmative act by the owner. By the Act of March 28, 1806, P. L. 644, 4 Sm. L. 346 (supplied by the Act of May 22, 1933, P. L. 853, art. IV, §409, 72 P.S. §5020-409), landowners must submit to the County Commissioners a description of their unseated lands. This apparently was not done by the Title Company, and the assessment was erroneously listed under the seated classification, and sold as such.

Prior to the Act of June 3, 1885, P. L. 71, 72 P.S. §5933, the sale of land which mistakenly appeared on the wrong list was invalid. *Scott v. Bell,* 344 Pa. 243, 25 A. 2d 308 (1942). That validating statute, however, provided that "All sales of seated or unseated lands within this commonwealth which shall hereafter be made for arrearages of taxes due thereon, shall be held, deemed and taken to be valid and effective irrespective of the fact whether such lands were seated or unseated at the time of the assessment of such taxes." The law today remains the same, conditioned solely by the requirement that the sale follow the assessment. *Blair v. Pennsylvania Turnpike Commission,* 152 Pa. Superior Ct. 555, 562, 33 A. 2d 490 (1943). See also *Scott v. Bell, supra.*

Our conclusion therefore is twofold: because the land in question possesed the characteristics of unseated

land, the improper assessment to the "Blanchard Estate" did not affect the validity of the 1916 tax sale; and because of the saving statute, the assessment of the tract on the seated list was similarly not fatal to the title acquired by appellees' predecessors.

## II.

Having failed to impeach the validity of the 1916 tax sale, appellant nevertheless presses an alternative argument, i.e., that the tax sale in 1912 of 306 acres of minerals in Warrant 1990, assessed in 1910 and 1911 to Charles Blanchard on the unseated list, was effective to convey the Johnston tract to appellant's predecessor in title. If this position is correct, the 1916 sale was, of course, a nullity. *Rockwell v. Warren County,* 228 Pa. 430, 77 Atl. 665 (1910).

The validity of the assessment in the name of Blanchard and the ability to transfer the gas rights by the Treasurer's deed of 1912 may be upheld for the same reasons, discussed above, which sanction the 1916 sale. The description of 306 acres of minerals, however, was inadequate to support a conveyance of the Johnston tract and must fail.[13]

Judge CHERRY found, and appellant does not contest, that no single mineral tract of 306 acres existed in Warrant 1990. In fact, Blanchard or his estate owned only 229 mineral acres in that warrant. Appellant argues that this is immaterial, because included in the 229 acres was the Johnston tract of 153 acres; the figure of 306 acres, though inaccurate because too high, reflected a desire to assess and sell all of Blanchard's minerals in Warrant 1990. He properly cites the rule that a misstatement of the number of acres in a parcel

---

[13] The Treasurer's deed of 1912 purported to convey merely "a certain tract of unseated land, containing three hundred six 306 acres . . . surveyed to Blanchard Charles Wt. No. 1990".

of land being sold will not vitiate a sale of the whole acreage. *Putnam v. Tyler,* 117 Pa. 570, 12 Atl. 43 (1888); *Reading v. Finney,* 73 Pa. 467 (1873); *Williston v. Colkett,* 9 Pa. 38 (1848).

The difficulty here, however, is not the misstated acreage but the fact that the tracts comprising the Blanchard acreage[14] were not contiguous. The controlling legal principle is that non-contiguous tracts cannot be grouped for a single assessment. *Arthurs v. King,* 95 Pa. 167 (1882); *Brown v. Hays,* 66 Pa. 229 (1871); *Morton v. Harris,* 9 Watts 319 (1840). The reason for the rule is thus stated by the Court in the case last cited: "The advertisement of four tracts as one being sanctioned, it will follow that any indefinite number may be thus published as one tract. The advertisement will not, in such case, give any notice to the owner of a single tract that his land is up for sale; if this mode of advertising is sanctioned, why not allow four or forty tracts to be assessed as one, and call it only an irregularity, as is done in this case?" 9 Watts at 327. See also *Hunter v. McKlveen,* 361 Pa. 479, 65 A. 2d 366 (1949), *supra.* We hold, accordingly, that the assessment and subsequent tax sale in 1912 were invalid. It is therefore unnecessary to consider other defenses to this second claim raised by the appellees, including appellant's failure to trace good title to himself, and waiver.

Judgment affirmed.

The former Mr. Chief Justice BELL and the former Mr. Justice BARBIERI took no part in the consideration or decision of this case.

---

[14] Appellant reconstructs, and we believe accurately, that the 229 acres of minerals assessed to the Blanchard Estate included the Johnston tract, the Amos Kline tract, and that part of the Kline-Wing tract which is situated in Warrant 1990.