## Kohl v. Dickey

*Max P. Gabreski,* for plaintiffs.
*William Sessler,* for defendant.

BREENE, *P.J.*, May 30, 1980—Before the court is plaintiffs' action in equity to set aside a treasurer's sale of two tracts of real property held on August 12, 1974 and to nullify the treasurer's deed delivered pursuant to said sale to defendant on August 13, 1976. The issues presented are whether the two parcels of land in question were seated or unseated and what effect this determination has on the validity of the sale in view of the notice given.

Pursuant to the stipulations of fact entered into by the parties on May 9 and May 5, 1980, the court makes the following

## FINDINGS OF FACT

1. On September 12, 1972 Oliver W. Kohl and Ruth E. Kohl, his wife, acquired title to a 25 acre tract of land and a 155 acre, 111 perches tract of land situate in Oakland Township, Venango County, Pa., from David E. Berenson, Sheriff of Venango County, Pa., which deed was recorded in the Recorder's Office of Venango County, Pa., on September 14, 1972 in Deed Book Volume 746, page 1005.

2. Legal title to the aforesaid real estate in the year 1972 was vested in Northeastern Well Services, Inc., and transferred by said corporation by conveyance to Grimes Consolidated, Inc., and properly assessed in the Assessment Office of the Venango County Courthouse in the name of Grimes Consolidated, Inc. Said assessment has no indication of whether lands are seated or unseated.

3. Plaintiffs have paid the real estate taxes on the aforesaid parcels of land for the calendar year 1973 and for each succeeding calendar year thereafter until the present date. For each of these years both properties were assessed in plaintiffs' name.

4. On July 15, 22, and 29, 1974 notice appeared in the legal sections of the Oil City Derrick and the News Herald, two local newspapers of general circulation, advertising the aforementioned property proposed to be sold for the nonpayment of taxes on August 12, 1974 by Calvin Gilmore, Treasurer of Venango County, Pa.

5. Calvin Gilmore, Treasurer of Venango County, did not give actual notice to the plaintiffs prior to the treasurer's sale of advertised "seated" lands held August 12, 1974.

6. By certified mail dated April 24, 1974 Calvin Gilmore, Treasurer of Venango County, did send to the former owner, Grimes Consolidated, Inc., a notice of the pending treasurer's sale of seated land.

7. The Treasurer of Venango County did not post either of the two tracts of land by erecting thereon notices of the impending treasurer's sale of seated lands scheduled for August 12, 1974.

8. On August 12, 1974 the property on the Treasurer's Records designated as Grimes Consolidated, Inc., and containing the aforementioned 25 and 155 acre, 111 perches parcels, was sold for the nonpayment of taxes for the year 1972, for $22.18, taxes and costs, and $86.63, taxes and costs, respectively, to Maurice R. Dickey.

9. On August 13, 1976 Calvin Gilmore, Treasurer of Venango County, delivered a Treasurer's Deed to defendant for the aforementioned parcels of land after a surplus bond was filed in each instance.

10. Plaintiffs had no knowledge or any notice of the proposed sale from either of the two tracts of land by erection thereon of notices of the impending treasurer's sale of seated lands scheduled for August 12, 1974.

11. Plaintiffs first gained knowledge of any ad-

verse claim to the aforesaid premises in August, 1976.

12. There are no improvements on the 155 acre, 111 perches tract except 8 wells and 2 air holes which were drilled on the premises around the year 1950 and have not been operated or pumped for at least ten years, or longer, and have the appearance of being abandoned and have had that appearance for many years.

13. There are no improvements whatsoever on the 25 acre tract of land which is contiguous to the 155 acre, 111 perches tract of land.

## DISCUSSION

Since the sale under question was held prior to the effective date of the Real Estate Tax Sale Law of July 7, 1947, P.L. 1368, 72 P.S. §5860.101 et seq., in Venango County, the entire dispute between plaintiffs and defendant centers around whether the two tracts of land were seated or unseated. If unseated, then the notice provisions of the Act of March 13, 1815, P.L. 117, 72 P.S. §5981 et seq., apply. There it is provided that notice of the tax sale of unseated property need only be given by publication of notice once a week for three consecutive weeks in at least two newspapers: 72 P.S. §6002.

Our Supreme Court has noted in Bannard v. New York State National Gas Corporaton, 448 Pa. 239, 253-54, 293 A. 2d 41, 49 (1972), that:

"If unseated, it is immaterial that the name of the owner as given in the assessment is inaccurate, since no personal liability is involved; the land, not the owner, is looked to for payment of delinquent taxes. As the Court said in Franklin Coal Company v. Bertels, 109 Pa. 550, 553-554 (1885), "When un-

seated land subject to taxation is sold, the title of the real owner passes to the purchaser, in whatever name it be assessed and sold, even if the person in whose name it was sold had not title thereto: [citations omitted]. The only limitation on this rule has been that the person assessed, even though not the true owner, must in some way have been connected with, or had his name associated with, the land [citations omitted]."

If the Act of 1815 notice provisions are applicable because the tract is unseated it is clear that the tax sale was valid since the publication notice requirements were complied with and the name the land was sold under was in some way connected with the land. But if the land was seated, then the notice requirements of the Act of May 29, 1931, P.L. 280, as amended, 72 P.S. §5971(a) et seq., would apply and mere notice by publication would not be sufficient.

Section 7 of the Act of 1931, 72 P.S. §5971(g), provides:

"In addition to such advertisement, at least ten days before any such sale, written notice thereof shall be served by the county treasurer, by registered mail or certified mail, upon the owner of such land, and if the whereabouts of the owner is unknown, such notice shall be served by registered mail or certified mail upon the terre tenant, if any . . . If such notice cannot be served in said manner on the owner or terre tenant, then such notice shall be served by the county treasurer by posting the same in the courthouse and at a conspicuous place on the premises."

The term "owner" as used in the above statute is restricted to one having a present interest or estate

in the property proposed to be sold for a tax delinquency and does not mean or include the assessed owner at the time the taxes became delinquent, even though he may be a predecessor in title: Shafer v. Hansen, 389 Pa. 500, 133 A. 2d 538 (1957). This court has stated that it is the responsibility of the treasurer to examine the assessment rolls prior to selling property for tax delinquency pursuant to the Act of 1931 to ascertain whether a subsequent purchaser has paid taxes on the property so that that person might be notified of the delinquency since he is the owner of the property: Venango County Treasurer's Report on Tax Sale, 18 D. & C. 2d 398 (1959).

It is apparent that if the Act of 1931 is applicable because the tract of land is seated, then the notice given here was not sufficient. Failure to serve notice on the owner of the land pursuant to the statutory mandates is a fatal defect in the tax sale procedure and renders the sale invalid and ineffective as to the property in question: March v. Banus, 395 Pa. 629, 151 A. 2d 612 (1959).

This court's inquiry then is: Was the land seated or unseated? Plaintiffs' argument that the tracts must be considered seated because they were advertised as such, the notice to the former owner stated they were such, and the deed delivered to defendant described them as such, is not persuasive. In Bannard v. New York State National Gas Corporation, supra (Bannard), the Pennsylvania Supreme Court was confronted with a situation similar to that at issue here. The court stated that notwithstanding the assessor's classification of the property as seated, it must deal with whether the land was seated or not as primarily a factual question: Id. at 254, 293 A. 2d at 50. Furthermore, the

court noted that section 1 of the Act of June 3, 1885, P.L. 71, 72 P.S. §5933, prevents a sale from being declared invalid simply because the land was sold on the wrong list: Id. at 255, 293 A. 2d at 50. We agree with these conclusions and consequently will determine ourselves whether the land was seated or not.

The classification of land as seated or unseated depends upon what has been, or is being done, upon it. As the Commonwealth Court has delineated in Miller v. Leopold, 23 Pa. Commonwealth Ct. 483, 490, 353 A. 2d 65, 69 (1976): "If upon the land there are such permanent improvements as indicate a personal responsibility for its taxes, it is assessed as seated. If there be no such improvements, the land is assessed as unseated."

There is no doubt that the 25 acre tract of property had no improvements on it and was consequently unseated at the time of the sale. But the 155 acre, 111 perches tract had 8 oil wells and 2 air holes upon it. Defendant contends that these are not such improvements as would make the land seated and, in the alternative, that even if the land was seated by virtue of these wells then it had become unseated through abandonment because the wells had not been operated for some ten years and gave the appearance of being abandoned.

This court finds that the oil wells and air holes were such improvements as to render the 155 acre, 111 perches tract seated at the time of the sale. The following excerpt from Bannard is instructive: "No improvements were made to the mineral tract, however, until 1957, when appellee gas company drilled its gas well. It therefore remained unseated land throughout this period, and should have been assessed for tax purposes as such." Bannard v. New

York State National Gas Corporation, supra, at 254, 293 A. 2d at 50.

By implication, the Supreme Court is stating that the gas wells constituted improvements such as to make the tract seated. We agree with this conclusion and do not find persuasive defendant's argument that the case at bar is distinguishable since it involves surface and subsurface rights instead of just subsurface rights as in Bannard.

This court also rejects defendant's abandonment argument. Initially, the court questions the validity of this principle of law in view of the lack of recent authority. But in any case, the facts herein do not support such a finding. The Pennsylvania Supreme Court has stated in Negley v. Breading, 32 Pa. 325, 326 (1858): "[T]he owner may abandon the possession of land so as to exonerate himself from personal liability for taxes; but such abandonment must be entire, unlimited in duration, and evinced by acts that leave no doubt of the intention. . . ." The court believes that the fact that plaintiffs paid the real estate taxes on the property in 1973 and all years thereafter are acts showing an intention directly opposite to that required for a finding of abandonment.

Pursuant to the above discussion, the court makes the following:

## CONCLUSIONS OF LAW

1. Whether land is seated or unseated is a factual determination to be made by the court in this situation, notwithstanding the assessor's classification of the land as seated or unseated.

2. The 25 acre tract of property was, and is, unseated.

3. The Act of 1885 prevents a sale from being declared invalid simply because the land was sold on the wrong list.

4. The notice provisions of the Act of 1815 were applicable to the sale of the 25 acre tract of land and were followed as mandated by statute.

5. The tax sale and treasurer's deed as to the 25 acre tract of land were, and are, valid.

6. Oil wells and air holes are such improvements as would make lands seated.

7. The 155 acre, 111 perches tract of property was, and is, seated.

8. Plaintiffs had not abandoned the possession of the 155 acre, 111 perches tract of land so as to change it from seated to unseated.

9. The notice provisions of the Act of 1931 were applicable to the 155 acre, 111 perches tract of land.

10. Plaintiffs were the owners to which notice was required to be given pursuant to section 7 of the Act of 1931.

11. Because notice was not given to plaintiffs by registered or certified mail the tax sale as to the 155 acre, 111 perches tract of land was invalid and the treasurer's deed for the same is a nullity.

## DECREE NISI

And now, May 30, 1980, after hearing and argument, it is ordered and decreed that:

(1) plaintiffs' complaint in equity to set aside the treasurer's sale and to nullify the treasurer's deed is granted in part and denied in part.

(2) the treasurer's sale as to the 155 acre, 111 perches parcel of land designated as County Map no. 15-01-30 is set aside and the treasurer's deed transferred to defendant for the same is a nullity.

(3) the treasurer's sale as to the 25 acre parcel of

land designated as County Map no. 15-02-01 was valid and the treasurer's deed transferred to defendant for the same is also valid.

(4) plaintiffs shall make payment to defendant for any moneys legitimately expended in maintaining and improving the 155 acre, 111 perches tract of land.

(5) Each party to pay own costs.